# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (BLS) |
| Remaining Debtors. | (Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, | |
| Plaintiff, | Adversary Proceeding No. 19-51027 (JKS) |
| vs. | |
| KENNETH HALBERT, | |
| Defendant. | |

## AMENDED COMPLAINT FOR AVOIDANCE
## AND RECOVERY OF AVOIDABLE TRANSFERS

The Woodbridge Liquidation Trust (the "Liquidation Trust" or "Plaintiff")

formed pursuant to the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge*

*Group of Companies, LLC and Its Affiliated Debtors* dated August 22, 2018 (Bankr. Docket

No. 2397) (as it may be amended, modified, supplemented, or restated from time to time, the

"Plan"[2]), as and for its *Amended Complaint for Avoidance and Recovery of Avoidable Transfers*

(this "Complaint") against Kenneth Halbert ("Defendant"), alleges as follows:

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard, #302, Sherman Oaks, California 91423.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## NATURE OF THE ACTION

1.      Since at least August 2012 until shortly before they sought bankruptcy protection, Woodbridge Group of Companies, LLC and its many hundreds of debtor affiliates (collectively, the "Debtors") were operated by their founder and principal, Robert Shapiro ("Shapiro"), as a Ponzi scheme.  As part of this fraud, Shapiro utilized the Debtors to raise over one billion dollars from approximately 10,000 investors as either Noteholders or Unitholders (collectively, "Investors").

2.      Those Investors often placed a substantial percentage of their net worth (including savings and retirement accounts) with the Debtors and now stand to lose a significant portion of their investments and to be delayed in the return of the remaining portion.  The quality of the Investors' lives will likely be substantially and adversely affected by the fraud perpetrated by Shapiro.

3.      Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties.  In reality, these statements were lies.  Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, there was no stream of payments, Investors' money was commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more notes and units to investors), and payment of principal and interest to existing investors.  The money that was used to acquire property

(almost always owned by a disguised affiliate) cannot be traced to any specific Investor. These are typical characteristics of Ponzi schemes.

4.     Because the Debtors operated as a Ponzi scheme, obtaining new money from Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each new investment was a net negative. Money was siphoned off to pay the expenses described above, so that the Debtors actually received only a fraction of the investment dollars. New money also perpetuated the Ponzi scheme, enabling the Debtors to return fictitious profits to early Investors; in the absence of new investment, the house of cards would fall (as it eventually did). At the same time, each investment created an obligation to return to the defrauded Investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

5.     The purpose of this lawsuit is to avoid and recover all monies previously paid to Defendant during the pendency of the Ponzi scheme, including amounts constituting repayment of principal, and amounts in excess of principal (however denominated, including, but not limited to, "fees," "interest," or "points") on "bridge" loans provided by Defendant to the Debtor which loans were repaid in full prior to the Initial Petition Date.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (C), (F), and (H). In any event, Plaintiff consents to entry of final orders or judgment by this Court. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

*The Liquidation Trust*

7.     On December 4, 2017 (the "Initial Petition Date"), certain of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  Other of the Debtors also filed voluntary chapter 11 cases either on the Initial Petition Date or within the following four months (collectively, the "Bankruptcy Cases").

8.     On October 26, 2018, this Court entered an order confirming the Plan (Bankr. Docket No. 2903).

9.     The Plan provides for, *inter alia*, the establishment of a the Liquidation Trust on the Effective Date of the Plan for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement.  *See* Plan §§ 1.75, 5.4.

10.    The Effective Date of the Plan occurred on February 15, 2019.

11.    On February 25, 2019, the Court entered an order closing the Bankruptcy Cases of all Debtors except Woodbridge Group of Companies, LLC and Woodbridge Mortgage Investment Fund 1, LLC (together, the "Remaining Debtors").  The Remaining Debtors' Bankruptcy Cases are being jointly administered under Case No. 17-12560 (KJC).

12.    On the Effective Date, the Liquidation Trust was automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets.  *See* Plan § 5.4.3.  Further, the Liquidation Trust, as successor in interest to the Debtors, has the right and power to file and pursue any and all Liquidation Trust Actions without any further order of the Bankruptcy Court.  *Id.* § 5.4.15.  "Liquidation Trust

Actions" include, *inter alia*, "all Avoidance Actions and Causes of Action held by the Debtors or their Estates. . . ." *Id.* § 1.76.

***Defendants***

13.     Defendant Kenneth Halbert is an individual residing in the State of Florida.  Upon information and belief, Defendant Kenneth Halbert also maintains a residence in Las Vegas, Nevada.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

14.     Halbert was a private lender who made short-term loans to Woodbridge in accordance with the terms of loan documentation executed by Halbert and one or more Woodbridge entities.  In connection with these loans, Halbert was purportedly given certain security interests, including a lien on Woodbridge's flagship property at 141 S. Carolwood Drive in Los Angeles, California – also known as the Owlwood Estate.

15.     The Trust owns and maintains the Debtors' books and records, which include the ledger of transfers made to and from Halbert.  That ledger (the "Halbert Ledger") is attached hereto as Exhibit 1.

16.     Within the two years preceding the Initial Petition Date, Defendant received transfers from the Debtors totaling not less than the amount set forth on the Halbert Ledger (the "Two Year Transfers"), as Prepetition Distributions from the Ponzi scheme in respect of bridge loans provided by Defendant to the Debtors to perpetuate the Ponzi scheme. The Two Year Transfers include (i) repayments of principal in the amount of not less than $19,627,500.00 and (ii) payments of amounts in excess of principal (constituting "net winnings") of not less than $596,408.07 (the latter referred to herein as the "Two Year Net Winnings

Transfers").  The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 1.

17.     Within the four years preceding the Initial Petition Date, Defendant received transfers totaling not less than the amount set forth on Exhibit 1 hereto (the "Four Year Transfers" and, collectively with the Two Year Transfers, the "Transfers"), as Prepetition Distributions of fictitious profits from the Ponzi scheme in respect of bridge loans provided by the Defendant to the Debtors to perpetuate the Ponzi scheme.  The Four Year Transfers include (i) repayments of principal in the amount of not less than $37,318,500.00 and (ii) payments of amounts in excess of principal (constituting "net winnings") of not less than $1,106,175.31 (the latter referred to herein as the "Four Year Net Winnings Transfers").  The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 1.  The Four Year Transfers are inclusive of the Two Year Transfers, but Plaintiff does not seek to recover the same sum more than once.

18.     Halbert had a close personal and business relationship with Robert Shapiro.  Shapiro referred to Halbert as his "good friend" and offered his vacation home, rent-free, to Halbert's son.  Halbert had an always-open line of communication with Shapiro regarding business matters.

19.     Halbert was personally aware of numerous troubling facts concerning the Debtors and Shapiro.  Among other things, Halbert was aware of the central lie of the Ponzi scheme:  Shapiro's false representation to investors that the real estate at issue was owned by bona fide third-party borrowers, when in fact it was owned by disguised Woodbridge affiliates.

20.     Woodbridge gave Halbert customized loan documentation that differed from the standard documents provided to other investors, with certain of Halbert's loans tied directly with a property-owning entity, and certain of Halbert's liens apparently tied directly to a real property (although Halbert never provided any funds to, nor received any payments from, the property-owning entity).

21.     Woodbridge gave Halbert better terms than it gave to essentially every other investor, including payment to Halbert of loan origination fees and at least one instance in which Shapiro told Halbert that he would get a "special price."

22.     Unlike the returns paid to essentially every other investor, the payments that Halbert received from Woodbridge were largely from entities ***other than*** the entities named on Halbert's signed documentation.

## FIRST CLAIM FOR RELIEF

### [Avoidance and Recovery of Actual Intent Fraudulent Transfers – Bankruptcy Code]

23.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

24.     The Two Year Transfers constituted transfers of the Debtors' property.

25.     The Two Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the transfers were prepetition distributions from the Ponzi scheme in respect of funds lent by Defendant to help the Debtors perpetuate a Ponzi scheme.

26.     The Two Year Transfers were made to or for the benefit of Defendant.

27.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendant, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendant for the benefit of the Liquidation Trust.

## SECOND CLAIM FOR RELIEF

### [Avoidance and Recovery of Constructive Fraudulent Transfers – Bankruptcy Code]

28.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

29.     The Two Year Net Winnings Transfers constituted transfers of the Debtors' property.

30.     The Two Year Net Winnings Transfers were made by the Debtors for less than reasonably equivalent value (insofar as they were "net winnings" of a Ponzi scheme) at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that Debtors would incur, debts beyond their ability to pay as such debts matured.

31.     The Two Year Net Winnings Transfers were made to or for the benefit of Defendant.

32.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Net Winnings Transfers free and clear of any claimed interest of Defendant, (b) directing that the Two Year

Net Winnings Transfers be set aside, and (c) recovering such Two Year Net Winnings Transfers or the value thereof from Defendant for the benefit of the Liquidation Trust.

## THIRD CLAIM FOR RELIEF

### [Avoidance and Recovery of Actual Intent Voidable Transactions – State Law]

33.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

34.     The Four Year Transfers constituted transfers of the Debtors' property.

35.     The Four Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the transfers were prepetition distributions from the Ponzi scheme in respect of funds lent by Defendant to help the Debtors perpetuate a Ponzi scheme.

36.     The Four Year Transfers were made to or for the benefit of Defendant.

37.     Each Debtor that made one or more of the Four Year Transfers has at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

38.     The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(1) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

39.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and

clear of any claimed interest of Defendant, (b) directing that the Four Year Transfers be set aside, and (c) recovering such Four Year Transfers or the value thereof from Defendant for the benefit of the Liquidation Trust.

## FOURTH CLAIM FOR RELIEF

### [Avoidance and Recovery of Constructive Voidable Transactions – State Law]

40.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

41.     The Four Year Net Winnings Transfers constituted transfers of the Debtors' property.

42.     The Four Year Net Winnings Transfers were made by the Debtors for less than reasonably equivalent value (insofar as they were "net winnings" of a Ponzi scheme) at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or was about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that it would incur, debts beyond their ability to pay as such debts matured.

43.     The Four Year Net Winnings Transfers were made to or for the benefit of Defendant.

44.     At the times of, and/or subsequent to, each of the Four Year Net Winnings Transfers, each Debtor that made one or more of the Four Year Net Winnings Transfers has at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

45. The Four Year Net Winnings Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(2) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

46. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Net Winnings Transfers free and clear of any claimed interest of Defendant, (b) directing that the Four Year Net Winnings Transfers be set aside, and (c) recovering such Four Year Net Winnings Transfers or the value thereof from Defendant for the benefit of the Liquidation Trust.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff requests that the Court enter judgment:

47. On the first claim for relief, (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendant, (b) directing that the Two Year Transfers be set aside, and (c) ordering Defendant to pay to Plaintiff the Two Year Transfers in the amount of not less than $19,627,500.00;

48. On the second claim for relief, (a) avoiding the Two Year Net Winnings Transfers free and clear of any claimed interest of Defendant, (b) directing that the Two Year Net Winnings Transfers be set aside, and (c) ordering Defendant to pay to Plaintiff the Two Year Net Winnings Transfers in the amount of not less than $596,408.07;

49. On the third claim for relief, (a) avoiding the Four Year Transfers free and clear of any claimed interest of Defendant, (b) directing that the Four Year Transfers be set aside, and (c) ordering Defendant to pay to Plaintiff the Four Year Transfers in the amount of not less than $37,318,500.00;

50. On the fourth claim for relief, (a) avoiding the Four Year Net Winnings Transfers free and clear of any claimed interest of Defendants, (b) directing that the Four Year Net Winnings Transfers be set aside, and (c) ordering Defendants to pay to Plaintiff the Four Year Net Winnings Transfers in the amount of not less than $1,106,175.31;

51. On all claims for relief, awarding Plaintiff prejudgment interest as permitted by law; and

52. For such other and further relief as the Court may deem just and proper.

Dated:  July 12, 2021

      */s/ Colin R. Robinson*
Bradford J. Sandler (DE Bar No. 4142)
Andrew W. Caine (CA Bar No. 110345)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: bsandler@pszjlaw.com
      acaine@pszjlaw.com
      crobinson@pszjlaw.com

*Counsel to Plaintiff Michael Goldberg, in his capacity as Liquidating Trustee of the Woodbridge Liquidation Trust*

# EXHIBIT 1

| Debtor | Bank Account | Clear Date | DSI Name | Memo | Four Year Period Receipts | Four Year Period Disbursements | Two Year Period Receipts | Two Year Period Disbursements |
|---|---|---|---|---|---|---|---|---|
| WSF | 1894317690 | 12/05/13 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | $ 150,000.00 | | |
| WMIF 1 | 1894630647 | 12/05/13 | RAYMOND JAMES | HALBERT 1M BL | $ 990,000.00 | | | |
| WSF | 1894317690 | 12/05/13 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | 250.00 | | |
| WSF | 1894317690 | 12/09/13 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 12/09/13 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | 280.00 | | |
| WSF | 1894317690 | 12/11/13 | KENNETH HALBERT | 500K BL PAYOFF+ INT | | 100,000.00 | | |
| WSF | 1894317690 | 12/11/13 | KENNETH HALBERT | 500K BL PAYOFF+ INT | | 280.00 | | |
| WSF | 1894317690 | 12/16/13 | KENNETH HALBERT | 400K BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 12/16/13 | KENNETH HALBERT | 400K BL PAYDOWN + INT | | 448.00 | | |
| WSF | 1894317690 | 12/17/13 | KENNETH HALBERT | 700K BL PAYDOWN+ INT | | 100,000.00 | | |
| WSF | 1894317690 | 12/17/13 | KENNETH HALBERT | 700K BL PAYDOWN + INT | | 560.00 | | |
| WSF | 1894317690 | 12/19/13 | KENNETH HALBERT | 1M BL PAYDOWN+ INT | | 100,000.00 | | |
| WSF | 1894317690 | 12/19/13 | KENNETH HALBERT | 1M BL PAYDOWN+ INT | | 600.00 | | |
| WSF | 1894317690 | 12/20/13 | KENNETH HALBERT | 1M BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 12/20/13 | KENNETH HALBERT | 1M BL PAYDOWN + INT | | 657.00 | | |
| WSF | 1894317690 | 12/24/13 | KENNETH HALBERT | 400K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 12/26/13 | KENNETH HALBERT | 400K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 12/26/13 | KENNETH HALBERT | 1.25M BL POINTS | | 12,500.00 | | |
| WSF | 1894317690 | 12/31/13 | KENNETH HALBERT | 400K BL PAID OFF | | 100,000.00 | | |
| WSF | 1894317690 | 01/06/14 | KENNETH HALBERT | 1M BL - DEC INT 26 DAYS | | 6,989.32 | | |
| WSF | 1894317690 | 01/06/14 | KENNETH HALBERT | 5M L.O.C DEC INT | | 5,208.33 | | |
| WSF | 1894317690 | 01/06/14 | KENNETH HALBERT | 700K BL - DEC INT | | 4,166.67 | | |
| WSF | 1894317690 | 01/06/14 | KENNETH HALBERT | 400K BL - DEC INT | | 3,125.00 | | |
| WSF | 1894317690 | 01/08/14 | KENNETH HALBERT | 700K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 01/08/14 | KENNETH HALBERT | 700K BL PAYDOWN | | 250.00 | | |
| WSF | 1894317690 | 01/10/14 | KENNETH HALBERT | 700K BL PAYOFF + INT | | 175,000.00 | | |
| WSF | 1894317690 | 01/10/14 | KENNETH HALBERT | 700K BL PAYDOWN + INT | | 125,000.00 | | |
| WSF | 1894317690 | 01/10/14 | KENNETH HALBERT | 700K BL PAYOFF + INT | | 600.00 | | |
| WSF | 1894317690 | 01/10/14 | KENNETH HALBERT | 700K BL PAYDOWN + INT | | 430.00 | | |
| WSF | 1894317690 | 01/15/14 | KENNETH HALBERT | 700K BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 01/15/14 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | 525.00 | | |
| WSF | 1894317690 | 01/22/14 | KENNETH HALBERT | 1M BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 01/22/14 | KENNETH HALBERT | 1M BL PAYDOWN + INT | | 755.00 | | |
| WSF | 1894317690 | 01/24/14 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 01/24/14 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | 850.00 | | |
| WSF | 1894317690 | 01/27/14 | KENNETH HALBERT | 1M BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 01/30/14 | KENNETH HALBERT | 500K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 01/31/14 | KENNETH HALBERT | 500K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 02/03/14 | KENNETH HALBERT | 500K BL PAYOFF + INT | | 100,000.00 | | |
| WSF | 1894317690 | 02/03/14 | KENNETH HALBERT | 5M L.O.C JAN INT | | 4,166.67 | | |
| WSF | 1894317690 | 02/03/14 | KENNETH HALBERT | 1M BL - JAN INT | | 7,291.67 | | |
| WSF | 1894317690 | 02/03/14 | KENNETH HALBERT | 500K BL - JAN INT | | 3,125.00 | | |
| WSF | 1894317690 | 02/03/14 | KENNETH HALBERT | 500K BL PAYOFF + INT | | 105.00 | | |
| WSF | 1894317690 | 02/03/14 | KENNETH HALBERT | | | 100,000.00 | | |
| WMIF 2 | 1894723483 | 02/05/14 | PLEDGED ACCOUNT (KENNETH HALBERT) | 600K BL | 594,000.00 | | | |
| WSF | 1894317690 | 02/05/14 | KENNETH HALBERT | 1M PAYDOWN + INT | | 175.00 | | |
| WSF | 1894317690 | 02/07/14 | KENNETH HALBERT | 1M PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 02/07/14 | KENNETH HALBERT | 1M PAYDOWN + INT | | 240.00 | | |
| WSF | 1894317690 | 02/13/14 | KENNETH HALBERT | 1M PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 02/14/14 | KENNETH HALBERT | 1M PAYDOWN + INT | | 450.00 | | |
| WSF | 1894317690 | 02/14/14 | KENNETH HALBERT | 1M PAYDOWN + INT | | 150,000.00 | | |
| WSF | 1894317690 | 02/14/14 | KENNETH HALBERT | 1M PAYOFF + INT | | 720.00 | | |
| WSF | 1894342482 | 02/19/14 | KENNETH HALBERT & ELLEN C HALBERT JT TEN | Deposit | 1,485,000.00 | | | |
| WSF | 1894317690 | 02/19/14 | KENNETH HALBERT | 1M PAYOFF + INT | | 150,000.00 | | |
| WSF | 1894317690 | 02/24/14 | KENNETH HALBERT | 600K BL PAYDOWN | | 1,000.00 | | |
| WSF | 1894317690 | 02/27/14 | KENNETH HALBERT | 1.5M BL FEB INT 9 DAYS | | 100,000.00 | | |
| WSF | 1894317690 | 02/27/14 | KENNETH HALBERT | 600K BL - FEB INT | | 5,022.36 | | |
| WSF | 1894317690 | 02/27/14 | KENNETH HALBERT | 5M L.O.C FEB INT | | 6,250.00 | | |
| WSF | 1894317690 | 02/27/14 | KENNETH HALBERT | 1M BL - FEB INT | | 4,166.67 | | |
| WSF | 1894317690 | 02/28/14 | KENNETH HALBERT | 600K BL PAYDOWN | | 1,562.50 | | |
| WSF | 1894317690 | 03/05/14 | KENNETH HALBERT | 600K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 03/05/14 | KENNETH HALBERT | 600K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 03/06/14 | KENNETH HALBERT | 600K BL PAYDOWN | | 175.00 | | |
| WSF | 1894317690 | 03/06/14 | KENNETH HALBERT | 600K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 03/11/14 | KENNETH HALBERT | 600K BL PAYDOWN + INT | | 225.00 | | |
| WSF | 1894317690 | 03/11/14 | KENNETH HALBERT | 600K BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 03/12/14 | KENNETH HALBERT | 600K BL PAYOFF + INT | | 350.00 | | |
| WMIF 2 | 1894723483 | 03/12/14 | PLEDGED ACCOUNT (KENNETH HALBERT) | HALBERT 500K BL, LESS 1 POINT | 495,000.00 | 100,000.00 | | |
| WSF | 1894317690 | 03/12/14 | KENNETH HALBERT | 600K BL PAYOFF + INT | | 500.00 | | |
| WMIF 2 | 1894723483 | 03/14/14 | PLEDGED ACCOUNT (KENNETH HALBERT) | HALBERT 700K BL LESS 1 POINT | 693,000.00 | | | |
| WSF | 1894317690 | 03/18/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 200,000.00 | | |
| WSF | 1894317690 | 03/18/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 1,235.00 | | |
| WSF | 1894317690 | 03/21/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 200,000.00 | | |
| WSF | 1894317690 | 03/21/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 1,450.00 | | |
| WSF | 1894317690 | 03/27/14 | KENNETH HALBERT | 500K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 03/28/14 | KENNETH HALBERT | 700K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 04/02/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 100,000.00 | | |

Prepared by Development Specialists, Inc.
Preliminary - subject to change and/or update.

Page 1 of 6

| Debtor | Bank Account | Clear Date | DSI Name | Memo | Four Year Period Receipts | Four Year Period Disbursements | Two Year Period Receipts | Two Year Period Disbursements |
|---|---|---|---|---|---|---|---|---|
| WSF | 1894317690 | 04/02/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 70.00 | | |
| WSF | 1894317690 | 04/03/14 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 04/03/14 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | 105.00 | | |
| WSF | 1894317690 | 04/04/14 | KENNETH HALBERT | 700K BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 04/04/14 | KENNETH HALBERT | 700K BL PAYDOWN + INT | | 140.00 | | |
| WSF | 1894317690 | 04/11/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 04/11/14 | KENNETH HALBERT | 1.5M BL - MAR INT | | 13,541.67 | | |
| WSF | 1894317690 | 04/11/14 | KENNETH HALBERT | 5M L.O.C MAR INT | | 4,166.67 | | |
| WSF | 1894317690 | 04/11/14 | KENNETH HALBERT | 700K BL - MAR INT - 17 DAYS | | 3,998.74 | | |
| WSF | 1894317690 | 04/11/14 | KENNETH HALBERT | 500K BL - MAR INT - 19 DAYS | | 3,192.19 | | |
| WSF | 1894317690 | 04/11/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 376.00 | | |
| WSF | 1894317690 | 04/14/14 | KENNETH HALBERT | 700K BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 04/14/14 | KENNETH HALBERT | 700K BL PAYDOWN + INT | | 500.00 | | |
| WSF | 1894317690 | 04/16/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 04/16/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 550.00 | | |
| WSF | 1894317690 | 04/17/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 04/17/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 600.00 | | |
| WSF | 1894317690 | 04/17/14 | KENNETH HALBERT | 700K BL PAYDOWN + INT | | 100,000.00 | | |
| WMIF 2 | 1894723483 | 04/21/14 | RAYMOND JAMES (KENNETH HALBERT) | 1M BL LESS 1 POINT | 990,000.00 | | | |
| WSF | 1894317690 | 04/22/14 | KENNETH HALBERT | 700K BL PAYDOWN + INT | | 720.00 | | |
| WSF | 1894317690 | 04/22/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 04/22/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 754.00 | | |
| WSF | 1894317690 | 04/23/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 150,000.00 | | |
| WSF | 1894317690 | 04/23/14 | KENNETH HALBERT | 1.5M BL PAYDOWN + INT | | 1,185.00 | | |
| WSF | 1894317690 | 04/24/14 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | 150,000.00 | | |
| WSF | 1894317690 | 04/24/14 | KENNETH HALBERT | 500K BL PAYDOWN + INT | | 1,235.00 | | |
| WSF | 1894317690 | 04/29/14 | KENNETH HALBERT | 700K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 05/01/14 | KENNETH HALBERT | 1M BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 05/06/14 | KENNETH HALBERT | 1.5 M BL PAYDOWN + INT | | 200,000.00 | | |
| WSF | 1894317690 | 05/06/14 | KENNETH HALBERT | 1.5 M BL PAYDOWN + INT | | 410.00 | | |
| WSF | 1894317690 | 05/12/14 | KENNETH HALBERT | 1.5 M BL PAYDOWN + INT | | 125,000.00 | | |
| WSF | 1894317690 | 05/12/14 | KENNETH HALBERT | 1.5 M BL PAYDOWN + INT | | 515.00 | | |
| WSF | 1894317690 | 05/15/14 | KENNETH HALBERT | 1 M BL PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 05/15/14 | KENNETH HALBERT | 1 M BL PAYDOWN + INT | | 415.00 | | |
| WSF | 1894317690 | 05/20/14 | KENNETH HALBERT | 1M BL - APR INT 9 DAYS | | 2,500.02 | | |
| WSF | 1894317690 | 05/20/14 | KENNETH HALBERT | 1M BL - APR INT | | 8,333.33 | | |
| WSF | 1894317690 | 05/20/14 | KENNETH HALBERT | 1.5M BL - APR INT | | 3,125.00 | | |
| WSF | 1894317690 | 05/20/14 | KENNETH HALBERT | 500K BL - APR INT | | 3,125.00 | | |
| WSF | 1894317690 | 05/20/14 | KENNETH HALBERT | 700K BL - APR INT | | 3,125.00 | | |
| WSF | 1894317690 | 05/21/14 | KENNETH HALBERT | 1.5 M BL PAYOFF + INT | | 125,000.00 | | |
| WSF | 1894317690 | 05/21/14 | KENNETH HALBERT | 1.5 M BL PAYOFF + INT | | 900.00 | | |
| WSF | 1894317690 | 05/29/14 | KENNETH HALBERT | 500K BL PAYOFF + 1M BL PAYDOWN | | 150,000.00 | | |
| WSF | 1894317690 | 05/29/14 | KENNETH HALBERT | 500K BL PAYOFF + 1M BL PAYDOWN | | 100,000.00 | | |
| WMIF 1 | 1894630647 | 06/03/14 | PLEDGED ACCOUN.... | K HALBERT 500K BL, LESS 1 POINT | 490,000.00 | | | |
| WSF | 1894317690 | 06/03/14 | KENNETH HALBERT | 1M BL INT MAY | | 6,666.67 | | |
| WSF | 1894317690 | 06/03/14 | KENNETH HALBERT | 700K BL INT MAY | | 2,083.33 | | |
| WSF | 1894317690 | 06/03/14 | KENNETH HALBERT | 500K BL INT MAY | | 1,562.50 | | |
| WSF | 1894317690 | 06/06/14 | KENNETH HALBERT | 700K PYOFF+1M PYDN + INT | | 200,000.00 | | |
| WSF | 1894317690 | 06/06/14 | KENNETH HALBERT | 700K PYOFF+1M PYDN + INT | | 50,000.00 | | |
| WSF | 1894317690 | 06/06/14 | KENNETH HALBERT | 700K PYOFF+1M PYDN + INT | | 425.00 | | |
| WMIF 2 | 1894723483 | 06/10/14 | KENNETH HALBERT | HALBERT 750K BL, LESS 2 POINTS | 735,000.00 | | | |
| WSF | 1894317690 | 06/11/14 | KENNETH HALBERT | 500K BL PAYOFF + INT | | 500,000.00 | | |
| WSF | 1894317690 | 06/11/14 | KENNETH HALBERT | 500K BL PAYOFF + INT | | 2,000.00 | | |
| WMIF 2 | 1894723483 | 06/13/14 | KENNETH HALBERT | BL | 1,965,000.00 | | | |
| WSF | 1894317690 | 06/16/14 | KENNETH HALBERT | 1M BL PAYDOWN + INT | | 250,000.00 | | |
| WSF | 1894317690 | 06/16/14 | KENNETH HALBERT | 1M BL PAYDOWN + INT | | 1,100.00 | | |
| WSF | 1894317690 | 06/19/14 | KENNETH HALBERT | 500K REVG GRID PAYOFF + INT | | 500,000.00 | | |
| WSF | 1894317690 | 06/19/14 | KENNETH HALBERT | 500K REVG GRID PAYOFF + INT | | 3,254.00 | | |
| WSF | 1894317690 | 07/01/14 | KENNETH HALBERT | 1M BL PAYDOWN + INT | | 200,000.00 | | |
| WSF | 1894317690 | 07/01/14 | KENNETH HALBERT | 1M BL PAYDOWN + INT | | 55.00 | | |
| WSF | 1894317690 | 07/08/14 | KENNETH HALBERT | 1M BL PAYOFF + INT | | 200,000.00 | | |
| WSF | 1894317690 | 07/08/14 | KENNETH HALBERT | 1M BL PAYOFF + INT | | 450.00 | | |
| WSF | 1894317690 | 07/11/14 | KENNETH HALBERT | 1.5M GRID NOTE PAYDOWN + INT | | 250,000.00 | | |
| WSF | 1894317690 | 07/11/14 | KENNETH HALBERT | 1.5M GRID NOTE PAYDOWN + INT | | 945.00 | | |
| WSF | 1894317690 | 07/18/14 | KENNETH HALBERT | 1.5M GRID NOTE PAYDOWN + INT | | 250,000.00 | | |
| WSF | 1894317690 | 07/18/14 | KENNETH HALBERT | 1.5M GRID NOTE PAYDOWN + INT | | 1,545.00 | | |
| WSF | 1894317690 | 07/29/14 | KENNETH HALBERT | 1.5M REVG GRID NOTE PAYDOWN | | 250,000.00 | | |
| WMIF 1 | 1894630647 | 07/29/14 | KENNETH HALBERT | HALBERT BL | 980,000.00 | | | |
| WSF | 1894317690 | 07/30/14 | KENNETH HALBERT | 750K REVG GRID NOTE - JUN INT 20 DAYS | | 5,208.40 | | |
| WSF | 1894317690 | 07/30/14 | KENNETH HALBERT | 1.5M REVG GRID NOTE - JUN INT 17 DAYS | | 8,854.11 | | |
| WSF | 1894317690 | 07/30/14 | KENNETH HALBERT | 500K REVG GRID NOTE - JUN INT 17 DAYS | | 2,951.37 | | |
| WSF | 1894317690 | 07/30/14 | KENNETH HALBERT | 1M BL - JUN INT | | 3,333.33 | | |
| WSF | 1894317690 | 08/12/14 | KENNETH HALBERT | 750 + 1.5M GRID NOTE PAYDOWNS + INT | | 125,000.00 | | |
| WSF | 1894317690 | 08/12/14 | KENNETH HALBERT | 750 + 1.5M GRID NOTE PAYDOWNS + INT | | 125,000.00 | | |
| WSF | 1894317690 | 08/12/14 | KENNETH HALBERT | 750 + 1.5M GRID NOTE PAYDOWNS + INT | | 1,030.00 | | |
| WSF | 1894317690 | 08/14/14 | KENNETH HALBERT | 1.5M REVG GRID NOTE - JUL INT | | 10,416.67 | | |
| WSF | 1894317690 | 08/14/14 | KENNETH HALBERT | 750K REVG GRID NOTE - JUL INT | | 7,812.50 | | |
| WSF | 1894317690 | 08/14/14 | KENNETH HALBERT | 1M GRID NOTE-JUL INT 2 DAYS | | 672.04 | | |
| WSF | 1894317690 | 08/22/14 | KENNETH HALBERT | ALL GRID NOTES PYDN + INT | | 125,000.00 | | |

Prepared by Development Specialists, Inc.
Preliminary - subject to change and/or update.

Page 2 of 6

| Debtor | Bank Account | Clear Date | DSI Name | Memo | Four Year Period Receipts | Four Year Period Disbursements | Two Year Period Receipts | Two Year Period Disbursements |
|---|---|---|---|---|---|---|---|---|
| WSF | 1894317690 | 08/22/14 | KENNETH HALBERT | ALL GRID NOTES PYDN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 08/22/14 | KENNETH HALBERT | ALL GRID NOTES PYDN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 08/22/14 | KENNETH HALBERT | ALL GRID NOTES PYDN + INT | | 2,640.00 | | |
| WSF | 1894317690 | 09/03/14 | KENNETH HALBERT | 1M REVG GRID NOTE - AUG INT | | 9,375.00 | | |
| WSF | 1894317690 | 09/03/14 | KENNETH HALBERT | 1.5M REVG GRID NOTE - AUG INT | | 5,468.75 | | |
| WSF | 1894317690 | 09/03/14 | KENNETH HALBERT | 750K REVG GRID NOTE - AUG INT | | 5,208.33 | | |
| WSF | 1894317690 | 09/15/14 | KENNETH HALBERT | 750K GRID PAYDOWN + INT | | 250,000.00 | | |
| WSF | 1894317690 | 09/15/14 | KENNETH HALBERT | 750K GRID PAYDOWN + INT | | 1,285.00 | | |
| WSF | 1894317690 | 09/19/14 | KENNETH HALBERT | 750K GRID PAYOFF + INT | | 250,000.00 | | |
| WSF | 1894317690 | 09/19/14 | KENNETH HALBERT | 750K GRID PAYOFF + INT | | 1,500.00 | | |
| WSF | 1894317690 | 10/01/14 | KENNETH HALBERT | 1.5M + 1M REVG GRID NOTE PAYDOWNS | | 125,000.00 | | |
| WSF | 1894317690 | 10/01/14 | KENNETH HALBERT | 1.5M + 1M REVG GRID NOTE PAYDOWNS | | 125,000.00 | | |
| WSF | 1894317690 | 10/06/14 | KENNETH HALBERT | 1M REVG GRID NOTE - SEP INT | | 9,375.00 | | |
| WSF | 1894317690 | 10/06/14 | KENNETH HALBERT | 1.5M REVG GRID NOTE - SEP INT | | 5,468.75 | | |
| WSF | 1894317690 | 10/08/14 | KENNETH HALBERT | 1.5M GRID NOTE PAYDOWN + INT | | 250,000.00 | | |
| WSF | 1894317690 | 10/08/14 | KENNETH HALBERT | 1.5M GRID NOTE PAYDOWN + INT | | 700.00 | | |
| WSF | 1894317690 | 10/16/14 | KENNETH HALBERT | 1.5M GRID NOTE PAYOFF/1M GRID PYDN+ INT | | 150,000.00 | | |
| WSF | 1894317690 | 10/16/14 | KENNETH HALBERT | 1.5M GRID NOTE PAYOFF/1M GRID PYDN+ INT | | 100,000.00 | | |
| WSF | 1894317690 | 10/16/14 | KENNETH HALBERT | 1.5M GRID NOTE PAYOFF/1M GRID PYDN+ INT | | 1,375.00 | | |
| WSF | 1894317690 | 10/27/14 | KENNETH HALBERT | 1M REVG GRID NOTE PAYDOWN | | 150,000.00 | | |
| WSF | 1894317690 | 10/29/14 | KENNETH HALBERT | 1M REVG GRID NOTE - OCT INT | | 7,031.25 | | |
| WSF | 1894317690 | 11/07/14 | KENNETH HALBERT | 1M REVG GRID PAYDOWN + INT | | 125,000.00 | | |
| WSF | 1894317690 | 11/07/14 | KENNETH HALBERT | 1M REVG GRID PAYDOWN + INT | | 300.00 | | |
| WSF | 1894317690 | 11/13/14 | KENNETH HALBERT | 1M REVG GRID PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 11/13/14 | KENNETH HALBERT | 1M REVG GRID PAYDOWN + INT | | 450.00 | | |
| WSF | 1894317690 | 11/21/14 | KENNETH HALBERT | 1M REVG GRID PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 11/21/14 | KENNETH HALBERT | 1M REVG GRID PAYDOWN + INT | | 720.00 | | |
| WSF | 1894317690 | 11/24/14 | KENNETH HALBERT | 1M REVG GRID PAYDOWN + INT | | 100,000.00 | | |
| WSF | 1894317690 | 11/24/14 | KENNETH HALBERT | 1M REVG GRID PAYDOWN + INT | | 825.00 | | |
| WSF | 1894317690 | 11/28/14 | KENNETH HALBERT | 1M REVG GRID PAYOFF + INT | | 100,000.00 | | |
| WSF | 1894317690 | 11/28/14 | KENNETH HALBERT | 1M REVG GRID PAYOFF + INT | | 959.00 | | |
| WSF | 1894342482 | 04/16/15 | KENNETH HALBERT | KENNETH HALBERT 500K BL, LESS POINT | 495,000.00 | | | |
| WSF | 1894342482 | 04/16/15 | KENNETH HALBERT | KENNETH HALBERT 500K BL POINT | | 5,000.00 | | |
| WSF | 1894317690 | 04/27/15 | KENNETH HALBERT | 500K BL APR INT 14 DAYS | | 1,944.46 | | |
| WSF | 1894317690 | 05/11/15 | KENNETH HALBERT | 500K BL/100K PAYDOWN/INT MAY 11 DAYS | | 100,000.00 | | |
| WSF | 1894317690 | 05/11/15 | KENNETH HALBERT | 500K BL/100K PAYDOWN/INT MAY 11 DAYS | | 305.88 | | |
| WSF | 1894317690 | 05/27/15 | KENNETH HALBERT | 500K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 06/10/15 | KENNETH HALBERT | 500K BL PAYDOWN | | 100,000.00 | | |
| WSF | 1894317690 | 06/10/15 | KENNETH HALBERT | 500K BL PAYDOWN | | 1,370.00 | | |
| WSF | 1894317690 | 06/19/15 | KENNETH HALBERT | | | 100,000.00 | | |
| WSF | 1894317690 | 06/19/15 | KENNETH HALBERT | | | 525.00 | | |
| WSF | 1894317690 | 06/26/15 | KENNETH HALBERT | BL PAYOFF | | 100,000.00 | | |
| WSF | 1894317690 | 06/29/15 | KENNETH HALBERT | 500K BL MAY INT | | 3,333.33 | | |
| WSF | 1894317690 | 06/29/15 | KENNETH HALBERT | 500K BL JUN INT | | 1,666.67 | | |
| WMIF 1 | 1894630647 | 07/16/15 | KENNETH HALBERT | 3M BL (HALBERT DEP DIRECTLY INTO OUR BANK) | 2,600,000.00 | | | |
| WMIF 1 | 1894630647 | 07/17/15 | KENNETH HALBERT | BAL 3M BL | 400,000.00 | | | |
| WSF | 1894317690 | 07/20/15 | KENNETH HALBERT | 3M BL FEE (NO INTEREST TO BE PAID) | | 50,000.00 | | |
| | General Journa | 07/21/15 | KENNETH HALBERT | WILLITS BUNDLE PAYOFF | | 553,557.99 | | |
| WSF | 1894317690 | 07/28/15 | KENNETH HALBERT | 3M BL PAYDOWN | | 600,000.00 | | |
| WSF | 1894317690 | 07/29/15 | KENNETH HALBERT | 3M BL PAYDOWN | | 546,443.00 | | |
| WSF | 1894317690 | 07/30/15 | KENNETH HALBERT | 3M BL PAYDOWN | | 650,000.00 | | |
| WSF | 1894317690 | 07/31/15 | KENNETH HALBERT | 3M BL PAYOFF | | 649,999.01 | | |
| WMIF 1 | 1894630647 | 08/18/15 | KENNETH HALBERT | 2M BL, LESS POINT (SHORT 80K) | 1,900,000.00 | | | |
| WSF | 1894317690 | 08/20/15 | KENNETH HALBERT | 1.9M BL POINT + 1K | | 20,000.00 | | |
| WSF | 1894317690 | 08/21/15 | KENNETH HALBERT (paid via Jon Freis) | K HALBERT 1.9M BL PAYDOWN | | 500,000.00 | | |
| WSF | 1894317690 | 08/31/15 | KENNETH HALBERT | 1.9M BL PAYDOWN | | 200,000.00 | | |
| WSF | 1894317690 | 08/31/15 | KENNETH HALBERT | 1.9M BL PAYDOWN INTEREST | | 1,000.00 | | |
| WSF | 1894317690 | 09/04/15 | KENNETH HALBERT | TBD | | 200,000.00 | | |
| WSF | 1894317690 | 09/04/15 | KENNETH HALBERT | TBD | | 275.00 | | |
| WSF | 1894317690 | 09/08/15 | KENNETH HALBERT | 1.9M BL INT AUG 13 DAYS | | 8,233.42 | | |
| WSF | 1894317690 | 09/15/15 | KENNETH HALBERT | | | 250,000.00 | | |
| WSF | 1894317690 | 09/15/15 | KENNETH HALBERT | | | 1,250.00 | | |
| WSF | 1894317690 | 09/16/15 | KENNETH HALBERT | | | 250,000.00 | | |
| WSF | 1894317690 | 09/16/15 | KENNETH HALBERT | | | 1,333.00 | | |
| WSF | 1894317690 | 09/17/15 | KENNETH HALBERT | | | 250,000.00 | | |
| WSF | 1894317690 | 09/17/15 | KENNETH HALBERT | | | 1,425.00 | | |
| WSF | 1894317690 | 09/18/15 | KENNETH HALBERT | | | 250,000.00 | | |
| WSF | 1894317690 | 09/18/15 | KENNETH HALBERT | | | 1,500.00 | | |
| WMIF 1 | 1894630647 | 11/09/15 | KENNETH HALBERT | 1.5M BL LESS 1+1 POINT | 1,470,000.00 | | | |
| WSF | 1894317690 | 11/18/15 | KENNETH HALBERT | | | 350,000.00 | | |
| WSF | 1894317690 | 11/18/15 | KENNETH HALBERT | | | 1,150.00 | | |
| WSF | 1894317690 | 11/24/15 | KENNETH HALBERT | | | 350,000.00 | | |
| WSF | 1894317690 | 11/24/15 | KENNETH HALBERT | | | 2,761.00 | | |
| WSF | 1894317690 | 12/01/15 | KENNETH HALBERT | | | 350,000.00 | | |
| WSF | 1894317690 | 12/01/15 | KENNETH HALBERT | | | 115.00 | | |
| WSF | 1894317690 | 12/03/15 | KENNETH HALBERT | | | 100,000.00 | | |
| WSF | 1894317690 | 12/03/15 | KENNETH HALBERT | | | 100.00 | | |
| WSF | 1894317690 | 12/07/15 | KENNETH HALBERT | 1.5M BL INT NOV 21 DAYS | | 5,600.07 | $ | 5,600.07 |
| WSF | 1894317690 | 12/09/15 | KENNETH HALBERT | | | 350,000.00 | | 350,000.00 |

Prepared by Development Specialists, Inc.
Preliminary - subject to change and/or update.

Page 3 of 6

Woodbridge Group of Companies, *et al.*
Transaction Analysis - Kenneth Halbert

| Debtor | Bank Account | Clear Date | DSI Name | Memo | Four Year Period Receipts | Four Year Period Disbursements | Two Year Period Receipts | Two Year Period Disbursements |
|---|---|---|---|---|---|---|---|---|
| WSF | 1894317690 | 12/09/15 | KENNETH HALBERT | | | 1,035.00 | | 1,035.00 |
| WMIF 1 | 1894630647 | 12/21/15 | KENNETH HALBERT | HALBERT 2M BL - BOB TO DETERMINE DETAILS... | 1,960,000.00 | | $ 1,960,000.00 | |
| WSF | 1894317690 | 12/31/15 | KENNETH HALBERT | | | 400,000.00 | | 400,000.00 |
| WSF | 1894317690 | 12/31/15 | KENNETH HALBERT | | | 6,670.00 | | 6,670.00 |
| WSF | 1894317690 | 01/08/16 | KENNETH HALBERT | | | 400,000.00 | | 400,000.00 |
| WSF | 1894317690 | 01/08/16 | KENNETH HALBERT | | | 1,055.00 | | 1,055.00 |
| | General Journal | 01/12/16 | KENNETH HALBERT (paid via Jon Freis) | PAID BY FREIS | | 1,200,000.00 | | 1,200,000.00 |
| WSF | 1894317690 | 01/12/16 | KENNETH HALBERT | FINAL INT 2M BL | | 5,918.00 | | 5,918.00 |
| WSF | 1894317690 | 02/11/16 | KENNETH HALBERT | HALBERT 1M BL | 980,000.00 | | 980,000.00 | |
| WGC | 1894818192 | 02/19/16 | KENNETH HALBERT | PAYOFF 1 OF 2 + INT | | 500,000.00 | | 500,000.00 |
| WGC | 1894818192 | 02/19/16 | KENNETH HALBERT | PAYOFF 2 OF 2 | | 500,000.00 | | 500,000.00 |
| WGC | 1894818192 | 02/19/16 | KENNETH HALBERT | PAYOFF 1 OF 2 + INT | | 2,302.00 | | 2,302.00 |
| WMIF 1 | 1894630647 | 03/18/16 | RAYMOND JAMES | KENNETH HALBERT 2.7M BL | 2,646,000.00 | | 2,646,000.00 | |
| WGC | 1894818192 | 03/29/16 | KENNETH HALBERT | 2.7M BL PAYDOWN | | 250,000.00 | | 250,000.00 |
| WGC | 1894818192 | 03/29/16 | KENNETH HALBERT | 2.7M BL - INT MAR | | 11,700.00 | | 11,700.00 |
| WGC | 1894818192 | 03/30/16 | KENNETH HALBERT | PAYDOWN | | 250,000.00 | | 250,000.00 |
| WGC | 1894818192 | 03/31/16 | KENNETH HALBERT | PAYDOWN | | 250,000.00 | | 250,000.00 |
| WGC | 1894818192 | 04/01/16 | KENNETH HALBERT | PAYDOWN | | 450,000.00 | | 450,000.00 |
| WGC | 1894818192 | 04/04/16 | KENNETH HALBERT | PAYDOWN | | 250,000.00 | | 250,000.00 |
| WGC | 1894818192 | 04/04/16 | KENNETH HALBERT | PAYDOWN | | 328.00 | | 328.00 |
| WGC | 1894818192 | 04/05/16 | KENNETH HALBERT | PAYDOWN | | 350,000.00 | | 350,000.00 |
| WGC | 1894818192 | 04/05/16 | KENNETH HALBERT | PAYDOWN | | 576.00 | | 576.00 |
| WGC | 1894818192 | 04/07/16 | KENNETH HALBERT | PAYDOWN | | 450,000.00 | | 450,000.00 |
| WGC | 1894818192 | 04/07/16 | KENNETH HALBERT | PAYDOWN | | 1,036.00 | | 1,036.00 |
| WGC | 1894818192 | 04/08/16 | KENNETH HALBERT | PAYDOWN | | 225,000.00 | | 225,000.00 |
| WGC | 1894818192 | 04/08/16 | KENNETH HALBERT | PAYDOWN | | 600.00 | | 600.00 |
| WGC | 1894818192 | 04/11/16 | KENNETH HALBERT | PAYDOWN | | 225,000.00 | | 225,000.00 |
| WGC | 1894818192 | 04/11/16 | KENNETH HALBERT | PAYDOWN | | 814.00 | | 814.00 |
| WMIF 1 | 1894630647 | 09/19/16 | KENNETH HALBERT | HALBERT 3M BL 2 OF 2, LESS 2 POINTS | 440,000.00 | | 440,000.00 | |
| WMIF 1 | 1894630647 | 09/19/16 | KENNETH HALBERT | HALBERT 3M BL 1 OF 2, LESS 2 POINTS | 2,500,000.00 | | 2,500,000.00 | |
| WGC | 1894818192 | 09/28/16 | KENNETH HALBERT | | | 300,000.00 | | 300,000.00 |
| WGC | 1894818192 | 09/28/16 | KENNETH HALBERT | | | 700.00 | | 700.00 |
| WGC | 1894818192 | 10/03/16 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 10/03/16 | KENNETH HALBERT | | | 750.00 | | 750.00 |
| WGC | 1894818192 | 10/06/16 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 10/06/16 | KENNETH HALBERT | | | 1,200.00 | | 1,200.00 |
| WGC | 1894818192 | 10/07/16 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 10/07/16 | KENNETH HALBERT | | | 1,000.00 | | 1,000.00 |
| WGC | 1894818192 | 10/12/16 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 10/12/16 | KENNETH HALBERT | | | 1,100.00 | | 1,100.00 |
| WGC | 1894818192 | 10/17/16 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 10/17/16 | KENNETH HALBERT | | | 1,400.00 | | 1,400.00 |
| WGC | 1894818192 | 10/18/16 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 10/18/16 | KENNETH HALBERT | | | 1,500.00 | | 1,500.00 |
| WGC | 1894818192 | 10/20/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 10/20/16 | KENNETH HALBERT | | | 1,500.00 | | 1,500.00 |
| WGC | 1894818192 | 10/25/16 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 10/25/16 | KENNETH HALBERT | | | 1,775.00 | | 1,775.00 |
| WGC | 1894818192 | 10/25/16 | KENNETH HALBERT | 1 POINT FOR ANOTHER 30 DAYS | | 17,000.00 | | 17,000.00 |
| WGC | 1894818192 | 10/27/16 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 10/27/16 | KENNETH HALBERT | | | 1,900.00 | | 1,900.00 |
| WGC | 1894818192 | 10/28/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 10/28/16 | KENNETH HALBERT | | | 1,350.00 | | 1,350.00 |
| WGC | 1894818192 | 11/01/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/01/16 | KENNETH HALBERT | | | 1,380.00 | | 1,380.00 |
| WGC | 1894818192 | 11/02/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/02/16 | KENNETH HALBERT | | | 1,500.00 | | 1,500.00 |
| WGC | 1894818192 | 11/03/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/03/16 | KENNETH HALBERT | | | 1,500.00 | | 1,500.00 |
| WGC | 1894818192 | 11/04/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/04/16 | KENNETH HALBERT | | | 1,500.00 | | 1,500.00 |
| WGC | 1894818192 | 11/07/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/07/16 | KENNETH HALBERT | | | 1,650.00 | | 1,650.00 |
| WGC | 1894818192 | 11/08/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/08/16 | KENNETH HALBERT | | | 1,650.00 | | 1,650.00 |
| WGC | 1894818192 | 11/09/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/09/16 | KENNETH HALBERT | | | 1,650.00 | | 1,650.00 |
| WGC | 1894818192 | 11/10/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/10/16 | KENNETH HALBERT | | | 1,650.00 | | 1,650.00 |
| WGC | 1894818192 | 11/14/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/14/16 | KENNETH HALBERT | | | 1,800.00 | | 1,800.00 |
| WGC | 1894818192 | 11/16/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/16/16 | KENNETH HALBERT | | | 1,808.00 | | 1,808.00 |
| WGC | 1894818192 | 11/17/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 11/17/16 | KENNETH HALBERT | | | 1,900.00 | | 1,900.00 |
| WGC | 1894818192 | 11/18/16 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 11/18/16 | KENNETH HALBERT | | | 4,000.00 | | 4,000.00 |
| WMIF 1 | 1894630647 | 12/01/16 | KENNETH HALBERT | 2 MIL BL LESS 2% POINTS | 1,960,000.00 | | 1,960,000.00 | |
| WGC | 1894818192 | 12/05/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |

Prepared by Development Specialists, Inc.
Preliminary - subject to change and/or update.

Page 4 of 6

| | | | | | Four Year Period | | Two Year Period | |
|---|---|---|---|---|---|---|---|---|
| Debtor | Bank Account | Clear Date | DSI Name | Memo | Receipts | Disbursements | Receipts | Disbursements |
| WGC | 1894818192 | 12/05/16 | KENNETH HALBERT | | | 165.00 | | 165.00 |
| WGC | 1894818192 | 12/06/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 12/06/16 | KENNETH HALBERT | | | 200.00 | | 200.00 |
| WGC | 1894818192 | 12/07/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 12/07/16 | KENNETH HALBERT | | | 230.00 | | 230.00 |
| WGC | 1894818192 | 12/09/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 12/09/16 | KENNETH HALBERT | | | 300.00 | | 300.00 |
| WGC | 1894818192 | 12/12/16 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 12/12/16 | KENNETH HALBERT | | | 400.00 | | 400.00 |
| WGC | 1894818192 | 12/14/16 | KENNETH HALBERT | | | 125,000.00 | | 125,000.00 |
| WGC | 1894818192 | 12/14/16 | KENNETH HALBERT | | | 575.00 | | 575.00 |
| WGC | 1894818192 | 12/15/16 | KENNETH HALBERT | | | 125,000.00 | | 125,000.00 |
| WGC | 1894818192 | 12/15/16 | KENNETH HALBERT | | | 620.00 | | 620.00 |
| WGC | 1894818192 | 12/16/16 | KENNETH HALBERT | | | 125,000.00 | | 125,000.00 |
| WGC | 1894818192 | 12/16/16 | KENNETH HALBERT | | | 660.00 | | 660.00 |
| WGC | 1894818192 | 12/20/16 | KENNETH HALBERT | | | 125,000.00 | | 125,000.00 |
| WGC | 1894818192 | 12/20/16 | KENNETH HALBERT | | | 825.00 | | 825.00 |
| WGC | 1894818192 | 12/21/16 | KENNETH HALBERT | | | 125,000.00 | | 125,000.00 |
| WGC | 1894818192 | 12/21/16 | KENNETH HALBERT | | | 865.00 | | 865.00 |
| WGC | 1894818192 | 12/23/16 | KENNETH HALBERT | | | 125,000.00 | | 125,000.00 |
| WGC | 1894818192 | 12/23/16 | KENNETH HALBERT | | | 950.00 | | 950.00 |
| WGC | 1894818192 | 12/27/16 | KENNETH HALBERT | | | 125,000.00 | | 125,000.00 |
| WGC | 1894818192 | 12/27/16 | KENNETH HALBERT | | | 1,525.00 | | 1,525.00 |
| WGC | 1894818192 | 12/28/16 | KENNETH HALBERT | | | 125,000.00 | | 125,000.00 |
| WGC | 1894818192 | 12/28/16 | KENNETH HALBERT | | | 1,150.00 | | 1,150.00 |
| WGC | 1894818192 | 12/29/16 | KENNETH HALBERT | | | 125,000.00 | | 125,000.00 |
| WGC | 1894818192 | 12/29/16 | KENNETH HALBERT | | | 1,200.00 | | 1,200.00 |
| WGC | 1894818192 | 12/30/16 | KENNETH HALBERT | | | 375,000.00 | | 375,000.00 |
| WGC | 1894818192 | 12/30/16 | KENNETH HALBERT | | | 3,700.00 | | 3,700.00 |
| WMIF 1 | 1894630647 | 02/01/17 | KENNETH HALBERT | KENNETH HALBERT 3M BL | 2,940,000.00 | | 2,940,000.00 | |
| WGC | 1894818192 | 02/07/17 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 02/07/17 | KENNETH HALBERT | | | 100.00 | | 100.00 |
| WGC | 1894818192 | 02/07/17 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 02/07/17 | KENNETH HALBERT | | | 300.00 | | 300.00 |
| WGC | 1894818192 | 02/08/17 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 02/08/17 | KENNETH HALBERT | | | 400.00 | | 400.00 |
| WGC | 1894818192 | 02/09/17 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 02/09/17 | KENNETH HALBERT | | | 450.00 | | 450.00 |
| WGC | 1894818192 | 02/10/17 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 02/10/17 | KENNETH HALBERT | | | 500.00 | | 500.00 |
| WGC | 1894818192 | 02/13/17 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 02/13/17 | KENNETH HALBERT | | | 650.00 | | 650.00 |
| WGC | 1894818192 | 02/14/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 02/14/17 | KENNETH HALBERT | | | 920.00 | | 920.00 |
| WGC | 1894818192 | 02/15/17 | KENNETH HALBERT | | | 150,000.00 | | 150,000.00 |
| WGC | 1894818192 | 02/15/17 | KENNETH HALBERT | | | 750.00 | | 750.00 |
| WGC | 1894818192 | 02/16/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 02/16/17 | KENNETH HALBERT | | | 527.00 | | 527.00 |
| WGC | 1894818192 | 02/17/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 02/17/17 | KENNETH HALBERT | | | 1,122.00 | | 1,122.00 |
| WGC | 1894818192 | 02/21/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 02/21/17 | KENNETH HALBERT | | | 1,380.00 | | 1,380.00 |
| WGC | 1894818192 | 02/22/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 02/22/17 | KENNETH HALBERT | | | 1,450.00 | | 1,450.00 |
| WGC | 1894818192 | 02/23/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 02/23/17 | KENNETH HALBERT | | | 1,512.00 | | 1,512.00 |
| WGC | 1894818192 | 02/24/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 02/24/17 | KENNETH HALBERT | | | 790.00 | | 790.00 |
| WGC | 1894818192 | 02/27/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 02/27/17 | KENNETH HALBERT | | | 890.00 | | 890.00 |
| WGC | 1894818192 | 02/28/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 02/28/17 | KENNETH HALBERT | | | 920.00 | | 920.00 |
| WGC | 1894818192 | 03/01/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 03/01/17 | KENNETH HALBERT | | | 954.00 | | 954.00 |
| WGC | 1894818192 | 03/02/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 03/02/17 | KENNETH HALBERT | | | 1,027.00 | | 1,027.00 |
| WGC | 1894818192 | 03/06/17 | KENNETH HALBERT | | | 350,000.00 | | 350,000.00 |
| WGC | 1894818192 | 03/06/17 | KENNETH HALBERT | | | 4,275.00 | | 4,275.00 |
| WMIF 1 | 1894630647 | 04/20/17 | KENNETH HALBERT | 3M BRIDGELOAN | 2,940,000.00 | | 2,940,000.00 | |
| WGC | 1894818192 | 04/21/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 04/25/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 04/25/17 | KENNETH HALBERT | | | 175.00 | | 175.00 |
| WGC | 1894818192 | 04/26/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 04/26/17 | KENNETH HALBERT | | | 165.00 | | 165.00 |
| WGC | 1894818192 | 04/27/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 04/27/17 | KENNETH HALBERT | | | 230.00 | | 230.00 |
| WGC | 1894818192 | 04/28/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 04/28/17 | KENNETH HALBERT | | | 230.00 | | 230.00 |
| WGC | 1894818192 | 05/01/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |

Prepared by Development Specialists, Inc.
Preliminary - subject to change and/or update.

Page 5 of 6

Woodbridge Group of Companies, *et al.*
Transaction Analysis - Kenneth Halbert

| Debtor | Bank Account | Clear Date | DSI Name | Memo | Four Year Period Receipts | Four Year Period Disbursements | Two Year Period Receipts | Two Year Period Disbursements |
|---|---|---|---|---|---|---|---|---|
| WGC | 1894818192 | 05/01/17 | KENNETH HALBERT | | | 330.00 | | 330.00 |
| WGC | 1894818192 | 05/04/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 05/04/17 | KENNETH HALBERT | | | 361.00 | | 361.00 |
| WGC | 1894818192 | 05/08/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 05/08/17 | KENNETH HALBERT | | | 1,120.00 | | 1,120.00 |
| WGC | 1894818192 | 05/09/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 05/09/17 | KENNETH HALBERT | | | 1,315.00 | | 1,315.00 |
| WGC | 1894818192 | 05/10/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 05/10/17 | KENNETH HALBERT | | | 1,380.00 | | 1,380.00 |
| WGC | 1894818192 | 05/11/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 05/11/17 | KENNETH HALBERT | | | 1,380.00 | | 1,380.00 |
| WGC | 1894818192 | 05/12/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 05/12/17 | KENNETH HALBERT | | | 1,500.00 | | 1,500.00 |
| WGC | 1894818192 | 05/15/17 | KENNETH HALBERT | | | 250,000.00 | | 250,000.00 |
| WGC | 1894818192 | 05/15/17 | KENNETH HALBERT | | | 2,055.00 | | 2,055.00 |
| WGC | 1894818192 | 05/16/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 05/16/17 | KENNETH HALBERT | | | 1,650.00 | | 1,650.00 |
| WGC | 1894818192 | 05/17/17 | KENNETH HALBERT | | | 250,000.00 | | 250,000.00 |
| WGC | 1894818192 | 05/17/17 | KENNETH HALBERT | | | 2,220.00 | | 2,220.00 |
| WGC | 1894818192 | 05/18/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 05/18/17 | KENNETH HALBERT | | | 1,840.00 | | 1,840.00 |
| WGC | 1894818192 | 05/19/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 05/19/17 | KENNETH HALBERT | | | 1,850.00 | | 1,850.00 |
| WGC | 1894818192 | 05/22/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 05/22/17 | KENNETH HALBERT | | | 2,038.00 | | 2,038.00 |
| WMIF 1 | 1894630647 | 07/05/17 | KENNETH HALBERT | 3M BRIDGELOAN SUPPOSED TO BE IN WG | 2,940,000.00 | | 2,940,000.00 | |
| WGC | 1894818192 | 07/11/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 07/11/17 | KENNETH HALBERT | | | 235.00 | | 235.00 |
| WGC | 1894818192 | 07/12/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 07/12/17 | KENNETH HALBERT | | | 235.00 | | 235.00 |
| WGC | 1894818192 | 07/13/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 07/13/17 | KENNETH HALBERT | | | 333.00 | | 333.00 |
| WGC | 1894818192 | 07/14/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 07/14/17 | KENNETH HALBERT | | | 333.00 | | 333.00 |
| WGC | 1894818192 | 07/17/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 07/17/17 | KENNETH HALBERT | | | 430.00 | | 430.00 |
| WGC | 1894818192 | 07/18/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 07/18/17 | KENNETH HALBERT | | | 430.00 | | 430.00 |
| WGC | 1894818192 | 07/19/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 07/19/17 | KENNETH HALBERT | | | 460.00 | | 460.00 |
| WGC | 1894818192 | 07/20/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 07/20/17 | KENNETH HALBERT | | | 1,000.00 | | 1,000.00 |
| WGC | 1894818192 | 07/21/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 07/21/17 | KENNETH HALBERT | | | 1,053.00 | | 1,053.00 |
| WGC | 1894818192 | 07/24/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 07/24/17 | KENNETH HALBERT | | | 1,250.00 | | 1,250.00 |
| WGC | 1894818192 | 07/25/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 07/25/17 | KENNETH HALBERT | | | 1,315.00 | | 1,315.00 |
| WGC | 1894818192 | 07/26/17 | KENNETH HALBERT | | | 200,000.00 | | 200,000.00 |
| WGC | 1894818192 | 07/26/17 | KENNETH HALBERT | | | 1,380.00 | | 1,380.00 |
| WGC | 1894818192 | 07/31/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 07/31/17 | KENNETH HALBERT | | | 850.00 | | 850.00 |
| WGC | 1894818192 | 08/07/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 08/07/17 | KENNETH HALBERT | | | 1,030.00 | | 1,030.00 |
| WGC | 1894818192 | 08/07/17 | KENNETH HALBERT | 2 POINTS - 1-WK EXTENSION | | 12,093.00 | | 12,093.00 |
| WGC | 1894818192 | 08/09/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 08/09/17 | KENNETH HALBERT | | | 1,100.00 | | 1,100.00 |
| WGC | 1894818192 | 08/10/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 08/10/17 | KENNETH HALBERT | | | 1,150.00 | | 1,150.00 |
| WGC | 1894818192 | 08/11/17 | KENNETH HALBERT | | | 100,000.00 | | 100,000.00 |
| WGC | 1894818192 | 08/11/17 | KENNETH HALBERT | | | 1,185.00 | | 1,185.00 |
| WGC | 1894818192 | 08/14/17 | KENNETH HALBERT | | | 400,000.00 | | 400,000.00 |
| WGC | 1894818192 | 08/14/17 | KENNETH HALBERT | | | 5,128.00 | | 5,128.00 |
| WGC | 1894818192 | 08/15/17 | KENNETH HALBERT | | | 400,000.00 | | 400,000.00 |
| WGC | 1894818192 | 08/15/17 | KENNETH HALBERT | OVERAGE PAID ON POINT | 1,500.00 | | 1,500.00 | |
| | | | | Totals | $ 35,589,500.00 | $ 38,424,675.31 | $ 19,307,500.00 | $ 20,223,908.07 |

| | | |
|---|---|---|
| Beginning Balance (Prior to Time Period) | $ 1,729,000.00 | $ 320,000.00 |
| Net Activity | (2,835,175.31) | (916,408.07) |
| Net Disbursements | $ (1,106,175.31) | $ (596,408.07) |

Prepared by Development Specialists, Inc.
Preliminary - subject to change and/or update.

Page 6 of 6

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.,*[1]<br><br>                   Remaining Debtors. | Chapter 11<br><br>Case No. 17-12560 (JKS)<br><br>(Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the Woodbridge Liquidation Trust,<br><br>                   Plaintiff,<br><br>      vs.<br><br>KENNETH HALBERT,<br><br>                   Defendant. | Adversary Proceeding No. 19-51027 (JKS) |

## DECLARATION OF THOMAS P. JEREMIASSEN IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

I, Thomas P. Jeremiassen, pursuant to 28 U.S.C. § 1746, declare:

1.     I am a Senior Managing Director of Development Specialists, Inc. ("DSI"), located at 333 S. Grand Avenue Suite 4100, Los Angeles, California 90071. Following the "Effective Date" of the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* (the "Plan"), DSI has been engaged to

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.

provide forensic accounting and financial advisory services to the Woodbridge Wind-Down Entity LLC (the "Wind-Down Entity") and the Woodbridge Liquidation Trust (the "Trust").

2. Prior to the "Effective Date" of the Plan, I supported the Chief Restructuring Officer of WGC Independent Manager LLC, a Delaware limited liability company, which was the sole manager of Woodbridge Group of Companies, LLC, a Delaware limited liability company and an affiliate of each of the entities that were debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases").

3. On February 13, 2018, the Court entered an order authorizing the Debtors to retain and employ DSI as their restructuring advisor. In such capacity, I became familiar with the day-to-day operations and financial affairs of the Debtors. I was one of the individuals responsible for implementing the Debtors' wind-down and liquidation strategies and overseeing the Debtors' financial and operational affairs. I have been consistently involved in or am familiar with the Debtors' wind-down activities and the Trust's pursuit of "claw-back" actions against former investors, brokers, and others.

4. The Trust maintains the books and records, including electronic communications, formerly owned by the Debtors, and I have access to those in my capacity as financial advisor and accountant to the Trust.

5. The Debtors' records reflect that Kenneth Halbert was a lender who made short-term loans to Woodbridge in accordance with the terms of loan documentation executed by Halbert and one or more Woodbridge entities. The ledger attached to the Amended Complaint as Exhibit 1 is a true and correct copy of the ledger of transfers made by the Debtors to and from Halbert.

6.      Attached hereto as <u>Exhibit A</u> is a true and correct copy of a "Demand Promissory Note" between Kenneth Halbert, on the one hand, and Sturmer Pippin Investments, LLC (owner of the Owlwood Estate), on the other hand.  The document includes Robert Shapiro's signature as "Manager" of Sturmer Pippin Investments, LLC.

7.      Attached hereto as <u>Exhibit B</u> is a true and correct copy of a deed of trust between Kenneth Halbert, on the one hand, and Sturmer Pippin Investments, LLC, on the other hand. The document includes Robert Shapiro's signature as "Manager" of Sturmer Pippin Investments, LLC.

8.      Attached hereto as <u>Exhibit C</u> is a true and correct copy of an e-mail from Robert Shapiro to, among others, Kenneth Halbert, in which Shapiro refers to Halbert as his "good friend."

9.      Attached hereto as <u>Exhibit D</u> is a true and correct copy of an e-mail exchange between Robert Shapiro and Kenneth Halbert in which Shapiro offers Halbert's son the use, rent-free, of Shapiro's vacation home in Colorado.

10.     Attached hereto as <u>Exhibit E</u> is a true and correct copy of an email exchange in which Shapiro tells Halbert "for you I make special price."

11.     Attached hereto as <u>Exhibits F and G</u> are true and correct copies of email exchanges in which Halbert asks Shapiro about perceived discrepancies in the interest payments that he received on account of Woodbridge investments.

12.     Attached hereto as <u>Exhibit H</u> is a true and correct copy of an e-mail and attachment in which Woodbridge offers Jeff Halbert (on information and belief, Halbert's son) a "finder's fee" on certain potential subsequent sales of the Owlwood Estate.

I declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge, information and belief.

Executed on July 12, 2021

/s/ *Thomas P. Jeremisassen*
Thomas P. Jeremiassen

# Exhibit A

## Demand Promissory Note
## Secured by Deed of Trust

As of September 15, 2016

For value received, the undersigned promises to pay to the order of KENNETH HALBERT 105 Blue Lagoon, Laguna Beach, CA 92651 the sum of $3,000,000, together with interest of twelve percent (12%) per annum on the unpaid balance. The entire unpaid principal and any accrued interest shall be fully and immediately payable UPON WRITTEN DEMAND of any holder hereof.

Upon default in making payment within Five (5) days of demand, and provided this note is turned over for collection, the undersigned agree(s) to pay all reasonable legal fees and costs of collection to the extent permitted by law. In addition, upon default, this note shall bear interest at the maximum rate allowed by law. This note shall take effect as a sealed instrument and be enforced in accordance with the laws of the payee's state. All parties to this note waive presentment, notice of nonpayment, protest and notice of protest, and agree to remain fully bound notwithstanding the release of any party, extension or modification of terms, or discharge of any collateral for this note.

This note is secured by a deed of trust of even date herewith executed by Maker.

Maker:
STURMER PIPPIN INVESTMENTS, LLC

By: _____
      Robert Shapiro, Manager

# Exhibit B

RECORDING REQUESTED BY AND

WHEN RECORDED, RETURN TO:

KENNETH HALBERT
105 Blue Lagoon
Laguna Beach CA 92651

APN:    4359-021-016
        4359-021-017
        4359-021-018

[SPACE ABOVE FOR RECORDER'S USE ONLY]

## SECOND PRIORTY DEED OF TRUST, SECURITY AGREEMENT, AND FIXTURE FILING WITH ASSIGNMENT OF RENTS AND AGREEMENTS

This Deed of Trust, Security Agreement, and Fixture Filing with Assignment of Rents and Agreements (this "Deed of Trust") is made as of September 15, 2016, by STURMER PIPPIN INVESTMENTS, LLC, a Delaware Limited Liability Company ("Trustor"), to Fidelity National Title Company, a California Corporation ("Trustee"), for the benefit of KENNETH HALBERT, an individual.

Witnesseth:

Trustor does irrevocably grant, transfer, and assign to Trustee, in trust, with power of sale, all Trustor's right, title, and interest now owned or later acquired in the real property ("Land") located in Los Angeles County, California, and more particularly described in attached Exhibit A, incorporated by reference (Trustor agrees that any greater title to the Land later acquired during the term of this Deed of Trust will be subject to this Deed of Trust), together with the rents, issues, and profits, subject however, to the right, power, and authority granted and conferred on Trustor in this Deed of Trust to collect and apply the rents, issues, and profits; and

Trustor also irrevocably grants, transfers, and assigns to Trustee, in trust, with power of sale, all of Trustor's right, title, and interest now owned or later acquired to the following property (including the rights or interests pertaining to the property) located at the Property:

(1) all buildings ("Buildings") and improvements now or later on the Land, and all appurtenances, easements, water and water rights, and pumps and pumping plants, and all shares of stock evidencing these; all machinery, equipment, appliances, and fixtures for generating or distributing air, water, heat, electricity, light, fuel, or refrigeration or for ventilating or sanitary purposes or for the exclusion of vermin or insects or for the removal of dust, refuse, or garbage; all wall safes, built-in furniture, and installations, shelving,

1

lockers, partitions, doorstops, vaults, elevators, dumbwaiters, awnings, window shades, venetian blinds, light fixtures, fire hoses and brackets and boxes for them, fire sprinklers, alarm systems, draperies, drapery rods and brackets, screens, linoleum, carpets, furniture, furnishings, fixtures, plumbing, laundry tubs and trays, iceboxes, refrigerators, heating units, stoves, water heaters, incinerators, and communication systems and installations for which any Building is specially designed; all of these items, whether now or later installed, being declared to be for all purposes of this Deed of Trust a part of the Land, the specific enumerations in this Deed of Trust not excluding the general;

(2) the rents, issues, profits, and proceeds relating to the foregoing; and

(3) the Property to the extent not included in clauses (1) and (2) above.

For the purpose of securing, in the order of priority that Beneficiary determines:

(1) payment of the indebtedness evidenced by a note of Trustor of the same date as this Deed of Trust in the principal amount of Three Million and 00/100 Dollars ($3,000,000.00) ("Note"), payable to Beneficiary or to order, and all extensions, modifications, or renewals of that Note;

(2) payment of the interest on that indebtedness according to the terms of the Note;

(3) payment of all other sums (with interest as provided in this Deed of Trust) becoming due and payable to Beneficiary or Trustee pursuant to the terms of this Deed of Trust;

(4) performance of every obligation contained in this Deed of Trust, the Note, any instrument now or later evidencing or securing any indebtedness secured by this Deed of Trust, and any agreements, supplemental agreements, or other instruments of security executed by Trustor as of the same date of this Deed of Trust or at any time subsequent to the date of this Deed of Trust for the purpose of further securing any indebtedness secured by this Deed of Trust, or any part of it, or for the purpose of supplementing or amending this Deed of Trust or any instrument secured by this Deed of Trust; and

(5) payment of all other obligations owed by Trustor to Beneficiary that by their terms recite that they are secured by this Deed of Trust, including those incurred as primary obligor or as guarantor.

Regardless of anything stated above or any other term contained in this Deed of Trust or in the Loan Documents (as defined in this Deed of Trust), none of Trustor's obligations under or pursuant to the Certification Agreement (as defined in this Deed of Trust) will be secured by the lien of this Deed of Trust.

## Article 1. Warranty of Title.

Trustor warrants that:

(a) Trustor is the lawful owner of the Property,

(b) Trustor will maintain and preserve the lien of this Deed of Trust until the Indebtedness has been paid in full,

(c) Trustor has good, right, and lawful authority to grant the Property as provided in this Deed of Trust, and

(d) Trustor will forever warrant and defend the grant made in this Deed of Trust against all claims and demands, except as are specifically set forth in this Deed of Trust.

## Article 2. Representations and Warranties.

Trustor represents and warrants to Beneficiary that as of the date of this Deed of Trust:

(a) Trustor is duly organized, validly existing, and in good standing under the laws of the State of its organization and is qualified to do business in California.

(b) Trustor has the requisite power and authority to own and manage its properties, to carry on its business as now being conducted, and to own, develop, and operate the Property.

(c) Trustor is qualified to do business in every jurisdiction in which the nature of its business or its properties makes qualification necessary.

(d) Trustor is in compliance with all laws, regulations, ordinances, and orders of public authorities applicable to it.

## Article 3. Affirmative Covenants.

Until the entire Indebtedness has been paid in full, Trustor covenants to and agrees with Beneficiary as follows:

### Section 3.1 Obligations of Trustor.

Trustor will pay the Indebtedness and Trustor will continue to be liable for the payment of the Indebtedness until it has been paid in full. Trustor:

(a) will timely perform all the covenants, agreements, terms, and conditions to be performed by Trustor:

(i) under this Deed of Trust;

(ii) as seller under each contract of sale of, and as lessor under each lease of, any portion of the Property for which a contract of sale or lease has been approved in writing by Beneficiary;

(iii) as required of Trustor under each document and agreement constituting one of the Security Documents;

(iv) under all other agreements between Trustor and Beneficiary in accordance with the respective terms of the agreement; and

(v) as required of Trustor under all other agreements to which Trustor is a party with respect to the Property;

(b) will not cancel, surrender, modify, amend, or permit the cancellation, surrender, modification, or amendment of any of the previously mentioned agreements or any of the covenants, agreements, terms, or conditions contained in any of them without the prior written consent, in each case, of Beneficiary; and

(c) will keep Beneficiary indemnified against all actions, proceedings, costs (including, without limitation, Beneficiary's counsel fees and disbursements), claims, and damages incurred or sustained by Beneficiary in respect of the nonpayment of any charges or the nonobservance or nonperformance of any of the covenants, agreements, terms, or conditions in any of the previously mentioned agreements.

### Section 3.2 Insurance.

(a) Trustor, at its sole cost and expense, will keep the Property insured for the mutual benefit of Trustor and Beneficiary against loss or damage by earthquake and fire, and, if the Property is within a flood zone, flood insurance, against loss or damage by other risks embraced by coverage of the type now known as the broad form of extended coverage, including, but not limited to, riot and civil commotion, vandalism, malicious mischief, burglary, theft, and mysterious disappearance, as well as earthquake and terrorism, and against any other risks or hazards that Beneficiary may from time to time reasonably designate, in an amount not less than one hundred percent (100%) of the then "full replacement cost" of the Improvements, without deduction for physical depreciation. The policies of insurance carried in accordance with this section will contain the "Replacement Cost Endorsement."

(b) Trustor, at its sole cost and expense, but for the mutual benefit of Trustor and Beneficiary, will maintain during the term of this Deed of Trust other insurance, and in any amounts, as may from time to time be reasonably required by Beneficiary against other insurable risks, including, without limitation, business interruption insurance.

(c) Trustor, at its sole cost and expense, will obtain and maintain public liability insurance covering the Property and the ownership, use, occupancy, and maintenance of the Property.

(d) All policies of insurance required pursuant to this Deed of Trust will be satisfactory in form and substance to Beneficiary and will be approved by Beneficiary as to amounts, form, risk coverage, deductibles, insurer, loss payable, and cancellation provisions. Beneficiary shall be named as loss payee.

### Section 3.3 Maintenance, Waste, and Repair.

Trustor will maintain the Improvements now or later existing in good and tenantable repair, and will not structurally alter them without the prior written consent of Beneficiary, or remove or demolish them in whole or in part, nor will Trustor suffer any waste of the Property or make any change in the use of the Property that will in any way increase any ordinary fire or other hazard insurance premiums or permit anything that may in any way impair the security of this Deed of Trust. Trustor will not abandon the Property or leave the Property unprotected, vacant, or deserted.

### Section 3.4 Imposition; Impounds.

(a) Impositions Affecting the Property. Trustor will pay when due all Impositions that are or that may become a lien on the Property or are assessed against the Property or its rents, royalties, profits, and income.

(b) Taxes Affecting Trustor. Trustor will file all federal, state, provincial, county, and municipal income tax returns required to be filed and will pay all taxes that become due pursuant to the returns or pursuant to any assessments received by Trustor.

(c) Impounds; Impound Account. At the request of Beneficiary, Trustor will pay on a monthly basis to Beneficiary an amount equal to one-twelfth (1/12th) of the annual cost of Impositions on the Property together with premiums on required insurance; the accumulated funds will be released to Trustor for payment of Impositions and insurance premiums, or may be directly applied by Beneficiary, if Beneficiary elects.

### Section 3.5 Compliance with Law.

Trustor will preserve and keep in full force its existence, rights, and powers. Trustor will promptly and faithfully comply with all present and future laws, ordinances, rules, regulations, and requirements of every governmental authority or agency and of every board of fire underwriters (or similar body exercising similar functions) having jurisdiction that may be applicable to it or to the Property or to the use or manner of occupancy, possession, operation, maintenance, alteration, or repair of the Property or any part of it, whether the law, ordinance, rule, order, regulation, or requirement necessitates structural changes or improvements or interferes with the use or enjoyment of the Property.

### Section 3.6 Books and Records.

Trustor will maintain complete books of account and other records reflecting the results of Trustor's operations (in conjunction with its other operations as well as its operation of the Property), in a form satisfactory to Beneficiary, and furnish to Beneficiary any information about the financial condition of Trustor, and the sales and operations of the Property as Beneficiary reasonably requests, including, but not limited to, the following information, which will be furnished without request:

(a) within thirty (30) days after the end of each month, a statement of revenues and expenses relating to the sales, rentals, and operations of the Property for the month just ended;

(b) as soon as available and in any event within sixty (60) days after the end of each fiscal year of Trustor, a copy of the annual audit report for the fiscal year for Trustor, including a balance sheet of Trustor as of the end of the fiscal year, and statements of income and retained earnings and of change in financial position of Trustor for the fiscal year, in each case certified in a manner acceptable to Beneficiary by independent public accountants acceptable to Beneficiary;

(c) promptly upon their becoming available, copies of all financial statements, reports, and notices (including tax returns) sent by Trustor to its partners or any governmental authority succeeding to any of its functions; and

(d) promptly upon receipt, copies of any reports by independent public accountants submitted to Trustor concerning its properties or operations. Beneficiary will have the right, at all reasonable times and on reasonable notice, to audit, at Trustor's sole cost and expense, Trustor's books of account and records, all of which will be made available to Beneficiary and Beneficiary's representatives for that purpose, from time to time, on Beneficiary's request.

### Section 3.7 Further Assurances.

Trustor, at Trustor's expense and at any time on the reasonable request of Beneficiary, will execute, acknowledge, and deliver any additional papers and instruments (including, without limitation, a declaration of no setoff) and any further assurances of title and will do or cause to be done all further acts and things that may be proper or reasonably necessary to carry out the purpose of this Deed of Trust and of the Loan Documents and to subject to the liens any property intended by the terms to be covered and any renewals, additions, substitutions, replacements, or betterments.

### Section 3.8 Statement by Trustor.

Trustor, on ten (10) days' written request, will furnish a statement of the amount due or outstanding on the Note and a statement of any offset counterclaims, or defenses to the payment.

### Section 3.9 Indemnity.

a) If any action or proceeding (whether judicial, regulatory, or administrative) is threatened or commenced, except an action to foreclose this Deed of Trust or to collect the Indebtedness: (i) that affects the Property or any portion of it; (ii) in which Beneficiary is or could be made a party; or (iii) in which it becomes necessary to defend or uphold the lien of this Deed of Trust, then all costs, fees, and expenses incurred by Beneficiary with respect to the action or proceeding (including, without

limitation, attorneys' fees and expenses) will, within ten (10) days after the submission of bills for the costs to Trustor, be paid directly to the billing party by Trustor.

(b) In addition, Trustor agrees to pay all costs, including, without limitation, attorneys' fees and expenses, incurred by Beneficiary in enforcing the terms of this Deed of Trust or the terms of any of the Loan Documents, whether or not suit is filed. Trustor agrees to indemnify and hold Beneficiary harmless from all liability, loss, damage, or expense (including, without limitation, attorneys' fees) that it may incur under this Deed of Trust, or in connection with the making of any of the loans or financial arrangements secured by this Deed of Trust, the enforcement of any of Beneficiary's rights or remedies, any action taken by Beneficiary under this Deed of Trust, or by reason or in defense of any claims and demands that may be asserted against Beneficiary arising out of the Collateral.

(c) On the failure of Trustor to make timely payment pursuant to the terms of Section 4.9(a) of this Deed of Trust, the payment may be paid by Beneficiary. Sums of money paid by Beneficiary, and sums owed to Beneficiary pursuant to Section 4.9(b) of this Deed of Trust, together with interest at the Default Rate from the date Beneficiary makes the payment or incurs the loss, will be secured by this Deed of Trust, prior to any right, title, or interest in or claim on the Property attaching or accruing subsequent to the lien of this Deed of Trust, and will be payable by Trustor to Beneficiary on demand.

(d) The provisions of this Section 4.9 will survive the termination of this Deed of Trust and the repayment of the Indebtedness.

## Section 3.10 Reimbursement.

Beneficiary will have the right to declare immediately due any amount paid by it for any tax, stamp tax, assessment, water rate, sewer rate, insurance premium, repair, rent charge, debt, claim, inspection, or lien having priority over this Deed of Trust, or over any other agreement given to secure the Indebtedness.

## Section 3.11 Litigation.

Trustor will promptly give written notice to Beneficiary of any litigation commenced or threatened affecting Trustor or the Property other than unlawful detainer proceedings brought by Trustor.

## Section 3.12 Tax Receipts.

Subject to the provisions of Section 3.4 of this Deed of Trust, Trustor will deliver to Beneficiary, within seven (7) days after demand, bills (that will be receipted from and after the date receipted bills are obtainable) showing the payment to the extent then due of all taxes, assessments (including those payable in periodic installments), water rates, sewer rates, or any other Imposition that may have become a lien on the Property or any Personalty prior to the lien of this Deed of Trust.

### Section 3.13 Additional Information.

Trustor will furnish to Beneficiary, within seven (7) days after written request, all information that Beneficiary may request concerning the performance by Trustor of the covenants of the Loan Documents, and Trustor will permit Beneficiary or its representatives at all reasonable times to make investigation or examination concerning that performance.

### Section 3.14 Right of Entry.

Trustor grants to Beneficiary and its agents, employees, consultants, and contractors the right to enter on the Property for the purpose of making any inspections, reports, tests (including, without limitation, soils borings, groundwater testing, wells, or soils analysis), inquiries, and reviews that Beneficiary, in its sole and absolute discretion, deems necessary to assess the then current condition of the Property. Beneficiary will provide Trustor with one (1) Business Day's notice of the entry. All costs, fees, and expenses (including, without limitation, those of Beneficiary's outside counsel and consultants) incurred by Beneficiary with respect to the inspections, reports, tests, inquiries, and reviews, together with all related preparation, consultation, analyses, and review, will be paid by Trustor to Beneficiary on demand, will accrue interest at the Default Rate until paid, and will be secured by this Deed of Trust, prior to any right, title, or interest in or claim on the Property attaching or accruing subsequent to the lien of this Deed of Trust.

### Article 4. Negative Covenants.

Until the entire Indebtedness has been paid in full, Trustor covenants to and agrees with Beneficiary as follows:

### Section 4.1 Restrictive Uses.

Trustor covenants not to initiate, join in, or consent to any change in any zoning ordinance, private restrictive covenant, assessment proceedings, or other public or private restriction limiting or restricting the uses that may be made of the Property or any part of it without the prior written consent of Beneficiary.

### Section 4.2 Other Financing.

Except for the liens securing the Indebtedness, Trustor will not create or permit to continue in existence any mortgage, pledge, encumbrance, lien, or charge of any kind (including purchase money and conditional sale liens) on any of the Property except for:

(a) liens for taxes not yet delinquent, and

(b) any other liens or charges that are specifically approved in writing by Beneficiary prior to its recordation.

Any transaction in violation of this section will cause all Indebtedness, irrespective of the maturity dates, at the option of the holder and without demand or notice, to immediately become due, together with any prepayment premium in accordance with the terms of the Note.

### Section 4.3 Transferability.

One of the inducements to Beneficiary for making the Loan is the identity of Trustor. The existence of any interest in the Property other than the interests of Trustor and Beneficiary and any encumbrance permitted in this Deed of Trust, even though subordinate to the security interest of Beneficiary, and the existence of any interest in Trustor other than those of the present owners, would impair the Property and the security interest of Beneficiary, and, therefore, Trustor will not sell, convey, assign, transfer, alienate, or otherwise dispose of its interest in the Property, either voluntarily or by operation of law, or agree to do so, without the prior written consent of Beneficiary. Consent to one transaction by Beneficiary will not be deemed a waiver of the right to require consent to further or successive transactions. If Trustor is a corporation, any sale, transfer, or disposition of fifty percent (50%) or more of the voting interest of Trustor or of any entity that directly or indirectly owns or controls Trustor, including, without limitation, the parent company of Trustor and the parent company of the parent company of Trustor, will constitute a sale of the Property for purposes of this article. If Trustor is a partnership, any change or addition of a general partner of Trustor, change of a partnership interest of Trustor, or sale, transfer, or disposition of fifty percent (50%) or more of the voting interest or partnership interest of any partner of Trustor or of any corporation, partnership or entity that directly or indirectly owns or controls any partner of Trustor, including, without limitation, each parent company of a partner of Trustor and each parent company of any parent company of a partner of Trustor, will constitute a sale of the Property for purposes of this section. If Trustor is a limited liability company, any change of the manager or any sale, transfer or disposition of fifty percent (50%) or more of the partnership interests of Trustor, or disposition of fifty percent (50%) or more of the voting interest of Trustor or of any corporation, partnership or entity that directly or indirectly owns or controls any member of Trustor, including without limitation, each parent company of Trustor and each parent company of any parent company of a member of Trustor, will constitute a sale of the Property for purposes of this section. Any transaction in violation of this section will cause all Indebtedness, irrespective of the maturity dates, at the option of the holder and without demand or notice, immediately to become due, together with any prepayment premium in accordance with the terms of the Note.

### Section 4.4 Condominium Conversions.

Trustor may not undertake any steps to convert the Property to condominiums without the prior written consent of Beneficiary, which consent may be withheld in Beneficiary's sole and absolute discretion. Such prohibited activities include any fling of a tentative tract map, recording of a condominium plan, filing for a public report with the California Department of Real Estate, or pursuing a sales program for condominium units.

## Article 5. Casualties and Condemnation.

### Section 5.1 Casualties.

) Trustor will promptly notify Beneficiary in writing after any loss or damage caused by fire or other casualty to the Property, and prior to the making of any repairs. Trustor will furnish to Beneficiary within ninety (90) days after the loss or damage the following:

(i) evidence satisfactory to Beneficiary of the cost of repair or reconstruction;

(ii) evidence satisfactory to Beneficiary that sufficient funds are available or committed for the benefit of Beneficiary, including insurance proceeds, payment and performance bonds, or otherwise, to complete the repair or reconstruction; and

(iii) evidence satisfactory to Beneficiary that the repair or reconstruction may be completed prior to maturity of the Loan in accordance with all applicable laws, rules, regulations, and ordinances and that all necessary permits and approvals have been or will be obtained.

If Trustor does not furnish this evidence to Beneficiary within the ninety-day period, or if Beneficiary in its sole discretion determines that repair or reconstruction is not economically feasible, then within thirty (30) days after the expiration of the ninety-day period, Beneficiary will have the option (in this Deed of Trust, "Repayment Option") to have all insurance proceeds applied against the Indebtedness.

(b) If Beneficiary does not elect the Repayment Option within the specified time period, Trustor will with all diligence repair or otherwise reconstruct the damage to the Property, all according to the original plans and specifications for the improvements and elevations or any modified plans and specifications conforming to the then laws and regulations as will first have been approved in writing by Beneficiary and any occupants of the Improvements having the right to approve. Beneficiary will use all insurance proceeds, if any, received by it relating to the damage or destruction to reimburse Trustor from time to time for expenditures made for repair of the damage or for the erection of any building, structure, or improvements in their place if permitted as follows:

10

(i) At the end of each month against Trustor's architect's certificate, an amount that will be that proportion of the insurance proceeds held in trust that eighty-five percent (85%) of the payments to be made to the contractors or materialmen for work done, materials supplied, and services rendered during that month bears to the total contract price.

(ii) At the completion of the work, the balance of the proceeds required for completing the payments for the work will be paid to or for the account of Trustor, provided that at the time of the payment:

(1) there are no liens (as evidenced by an endorsement satisfactory to Beneficiary issued by Trustee) against the Property by reason of the work, or proof satisfactory to Beneficiary has been submitted that all costs of the work have been paid; and

(2) Trustor's architect will certify that all required work is completed and is proper and of a quality and class of the original work required by the original plans and specifications and in accordance with the approved plans and specifications.

If the insurance proceeds exceed the costs of completing the work, the excess insurance proceeds will belong and be retained by or be paid over to Beneficiary to be applied against the Indebtedness. If the costs of completing the work exceed the insurance proceeds, Trustor will pay the balance of the costs of completing the work within thirty (30) days after the completion.

### Section 5.2 Condemnation.

Trustor, immediately upon obtaining knowledge of the institution of any proceedings for the condemnation of the Property or any portion of it, will notify Trustee and Beneficiary of the pendency of the proceedings. Trustee and Beneficiary may participate in and control any proceedings and Trustor from time to time will deliver to Beneficiary all instruments requested by Beneficiary to permit participation and control. If there are condemnation proceedings, the award or compensation payable is hereby assigned to and will be paid to Beneficiary. Beneficiary will be under no obligation to question the amount of any award or compensation and may accept it in the amount in which it is paid. In any condemnation proceedings, Beneficiary may be represented by counsel selected by Beneficiary. The proceeds of any award or compensation received will, at the option of Beneficiary, either be applied, without premium, to the prepayment of the Note or be paid over to Trustor for restoration of the Improvements in accordance with the provisions of Section 7.1 of this Deed of Trust.

### Article 6. Events of Default and Remedies of Beneficiary.

## Section 6.1 Events of Default.

The following events are each an "Event of Default":

(a) Default in the payment of any sum of principal or interest when due under the Note or any other sum due under the Loan Documents.

(b) Failure to maintain insurance as provided in Section 3.2 hereof, or failure to pay Impositions pursuant to Section 3.4 hereof.

(c) The failure (without cure during the applicable period, if any, for cure) of any Loan Party to observe, perform, or discharge any obligation, term, covenant, or condition of any of the Loan Documents, any agreement relating to the Property, or any agreement or instrument between any Loan Party and Beneficiary.

(d) The entry of an order for relief under federal bankruptcy laws as to Trustor or the adjudication of Trustor as insolvent or bankrupt pursuant to the provisions of any state insolvency or bankruptcy act; the commencement by Trustor of any case, proceeding, or other action seeking any reorganization, arrangement, composition, adjustment, liquidation, dissolution, or other relief for debtors; Trustor's consent to, acquiescence in, or attempt to secure the appointment of, any Receiver of all or any substantial part of its properties or of the Property; Trustor's generally not paying its debts as they become due or admitting in writing its inability to pay its debts or making a general assignment for the benefit of creditors; or Trustor's taking of any action to authorize any of the acts set forth above in this section.

(e) Any case, proceeding, or other action against Trustor is commenced, seeking to have an order for relief entered against it as a debtor or seeking any reorganization, arrangement, composition, adjustment, liquidation, dissolution, or similar relief under any present or future statute, law, or regulation relating to bankruptcy, insolvency, reorganization, or other relief for debtors, or seeking appointment of any Receiver for Trustor or for all or any substantial part of its property or for the Property, and that case, proceeding, or other action:

(i) results in the entry of an order for relief against it that is not fully stayed within seven (7) Business Days after the entry, or

(ii) remains undismissed for an aggregate of thirty (30) days (whether or not consecutive);

or the possibility that any portion of the Property would, by operation of law or otherwise, devolve on or pass to any Person other than Trustor and that situation continues and is not remedied by Trustor within thirty (30) days after the happening of the event.

(f) The assignment by Trustor, as lessor or sublessor, as the case may be, of the rents or the income of the Property or any part of it (other than to Beneficiary) without first obtaining the written consent of Beneficiary.

(g) The following events:

(i) The filing of any claim or lien against the Property or any part of it, whether or not the lien is prior to this Deed of Trust, and the continued maintenance of

the claim or lien for a period of thirty (30) days without discharge, satisfaction, or adequate bonding in accordance with the terms of this Deed of Trust;

(ii) the existence of any interest in the Property other than those of Trustor, Beneficiary, any tenants of Trustor, and any one listed in a title exception approved by Beneficiary in writing; or

(iii) the sale, hypothecation, conveyance, or other disposition of the Property except in accordance with Sections 5.2 or 5.3 of this Deed of Trust, any of which will be an Event of Default because Trustor's obligation to own and operate the Property is one of the inducements to Beneficiary to make the Loan;

(h) Default under any agreement to which Trustor is a party, which agreement relates to the borrowing of money by Trustor from any Person.

(i) Any representation or warranty made by any Loan Party or any other Person under this Deed of Trust or in, under, or pursuant to the Loan Documents, is false or misleading in any material respect as of the date on which the representation or warranty was made.

(j) Any of the Loan Documents, at any time after their respective execution and delivery and for any reason, cease to be in full force or are declared null and void, or the validity or enforceability is contested by any Loan Party or any stockholder or partner of any Loan Party, or any Loan Party denies that it has any or further liability or obligation under any of the Loan Documents to which it is a party.

(k) Any of the Security Documents, at any time after their respective execution and delivery and for any reason, cease to constitute valid and subsisting liens or valid and perfected security interests in and to the property purported to be subject to any of the Security Documents;

(l) Any representation made by any Loan Party in the Certification Agreement is false or misleading in any material respect as of the date made, or any breach or default in any of Trustor's obligations under the Certification Agreement;

(m) The occurrence of any Material Adverse Change.

If one or more Event of Default occurs and is continuing, then Beneficiary may declare all the Indebtedness to be due and the Indebtedness will become due without any further presentment, demand, protest, or notice of any kind, and Beneficiary may:

(i) in person, by agent, or by a receiver, and without regard to the adequacy of security, the solvency of Trustor, or the existence of waste, enter on and take possession of the Property or any part of it in its own name or in the name of Trustee, sue for or otherwise collect the rents, issues, and profits, and apply them, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon the Indebtedness, all in any order that Beneficiary may determine. The entering on and taking possession of the Property, the collection of rents, issues, and profits, and the application of them will not cure or waive any default or notice of default or invalidate any act done pursuant to the notice;

(ii) commence an action to foreclose this Deed of Trust in the manner provided by law for the foreclosure of mortgages of real property;

(iii) deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause the Property to be sold, which notice Trustee or Beneficiary will cause to be filed for record;

(iv) with respect to any Personalty, proceed as to both the real and personal property in accordance with Beneficiary's rights and remedies in respect of the Land, or proceed to sell the Personalty separately and without regard to the Land in accordance with Beneficiary's rights and remedies; or

(v) exercise any of these remedies in combination or any other remedy at law or in equity.

### Section 6.2 Power of Sale.

If Beneficiary elects to foreclose by exercise of the power of sale in this Deed of Trust, Beneficiary will also deposit with Trustee this Deed of Trust, the Note, and any receipts and evidence of expenditures made and secured as Trustee may require. If notice of default has been given as then required by law, and after lapse of the time that may then be required by law, after recordation of the notice of default, Trustee, without demand on Trustor, will, after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels as Trustee determines, and in any order that it may determine, at public auction to the highest bidder. Trustee may postpone sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time after that may postpone the sale by public announcement at the time fixed by the preceding postponement, and without further notice make the sale at the time fixed by the last postponement; or Trustee may, in its discretion, give a new notice of sale. Beneficiary may rescind any notice of default at any time before Trustee's sale by executing a notice of rescission and recording it. The recordation of the notice will constitute a cancellation of any prior declaration of default and demand for sale and of any acceleration of maturity of Indebtedness affected by any prior declaration or notice of default. The exercise by Beneficiary of the right of rescission will not constitute a waiver of any default then existing or subsequently occurring, or impair the right of Beneficiary to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the Note or this Deed of Trust, or any of the rights, obligations, or remedies of Beneficiary or Trustee. After sale, Trustee will deliver to the purchaser its deed conveying the property sold, but without any covenant or warranty, express or implied. The recitals in the deed of any matters or facts will be conclusive proof of their truthfulness. Any Person, including Trustor, Trustee, or Beneficiary, may purchase at that sale. If allowed by law, Beneficiary, if it is the purchaser, may turn in the Note at the amount owing on it toward payment of the purchase price (or for endorsement of the purchase price as a payment on the Note if the amount owing exceeds the purchase price). Trustor expressly waives any right of redemption after sale that Trustor may have at the time of sale or that may apply to the sale.

(b) Trustee, upon the sale, will make (without any covenant or warranty, express or implied), execute and, after due payment made, deliver to a purchaser and its heirs or assigns a deed or other record of interest, as the case may be, to the Property sold, which will convey to the purchaser all the title and interest of Trustor in the Property and will apply the proceeds of the sale in payment:

14

(i) first, of the expenses of the sale together with the expenses of the trust, including, without limitation, attorneys' fees, that will become due on any default made by Trustor, and also any sums that Trustee or Beneficiary have paid for procuring a search of the title to the Property subsequent to the execution of this Deed of Trust; and

(ii) second, in payment of the Indebtedness then remaining unpaid, and the amount of all other monies with interest in this Deed of Trust agreed or provided to be paid by Trustor.

Trustee will pay the balance or surplus of the proceeds of sale to Trustor and its successors or assigns as its interests may appear.

### Section 6.3 Proof of Default.

If there is a sale of the Property, or any part of it, and the execution of a deed for it, the recital of default and of recording notice of breach and election of sale, and of the elapsing of the required time between the recording and the following notice, and of the giving of notice of sale, and of a demand by Beneficiary that the sale should be made, will be conclusive proof of the default, recording, election, elapsing of time, and the due giving of notice, and that the sale was regularly and validly made on proper demand by Beneficiary. Any deed with these recitals will be effectual and conclusive against Trustor, its successors, and assigns, and all other Persons. The receipt for the purchase money recited or in any deed executed to the purchaser will be sufficient discharge to the purchaser from all obligations to see to the proper application of the purchase money.

### Section 6.4 Protection of Security.

If an Event of Default occurs and is continuing, Beneficiary or Trustee, without notice to or demand upon Trustor, and without releasing Trustor from any obligations or defaults may:

(a) enter on the Property in any manner and to any extent that either deems necessary to protect the security of this Deed of Trust;

(b) appear in and defend any action or proceeding purporting to affect, in any manner, the Obligations or the Indebtedness, the security of this Deed of Trust, or the rights or powers of Beneficiary or Trustee;

(c) pay, purchase, or compromise any encumbrance, charge, or lien that in the judgment of Beneficiary or Trustee is prior or superior to this Deed of Trust; and

(d) pay expenses relating to the Property and its sale, employ counsel, and pay reasonable attorneys' fees.

Trustor agrees to repay on demand all sums expended by Trustee or Beneficiary pursuant to this section with interest at the Default Rate, and those sums, with interest, will be secured by this Deed of Trust.

### Section 6.5 Receiver.

If an Event of Default occurs and is continuing, Beneficiary, as a matter of strict right and without notice to Trustor or anyone claiming under Trustor and without regard to the then value of the Property, will have the right to apply *ex parte* to any court having jurisdiction to appoint a Receiver of the Property, and Trustor waives notice of any application for that, provided a hearing to confirm the appointment with notice to Trustor is set within fourteen (14) days after the appointment. Any Receiver will have all the powers and duties of receivers in similar cases and all the powers and duties of Beneficiary in case of entry as provided in this Deed of Trust, and will continue as such and exercise all those powers until the date of confirmation of sale, unless the receivership is terminated sooner.

### Section 6.6 Curing the Defaults.

If Trustor at any time fails to perform or comply with any of the terms, covenants, and conditions required on Trustor's part to be performed and complied with under this Deed of Trust, the Note, any of the other Loan Documents, or any other agreement that, under the terms of this Deed of Trust, Trustor is required to perform, then Beneficiary, after seven (7) Business Days' notice to Trustor (or without notice if insurance premiums are not paid when due or if Beneficiary determines that an emergency exists), and without waiving or releasing Trustor from any of the Obligations, may, subject to the provisions of any of the agreements:

(a) make from its own funds any payments payable by Trustor and take out, pay for, and maintain any of the insurance policies provided for; and

(b) perform any other acts on the part of Trustor to be performed and enter on the Property for that purpose.

The making by Beneficiary of payments out of Beneficiary's own funds will not, however, be deemed to cure the default by Trustor, and they will not be cured unless and until Trustor reimburses Beneficiary for the payments plus interest at the default rate. All sums paid and all reasonable costs and expenses incurred by Beneficiary in connection with the performance of any act, together with interest on unpaid balances at the Default Rate from the respective dates of Beneficiary's making of each payment, will be added to the principal of the Indebtedness, will be secured by the Security Documents and by the lien of this Deed of Trust, prior to any right, title, or interest in or claim on the Property attaching or accruing subsequent to the lien of this Deed of Trust, and will be payable by Trustor to Beneficiary on demand.

### Section 6.7 Inspection Rights.

On reasonable notice (except in the case of an emergency), and without releasing Trustor from any obligation to cure any default of Trustor, Beneficiary or its agents, representatives, and employees acting by themselves or through a court-appointed receiver, may, from time to time and at all reasonable times (or at any time in the case of an emergency) enter and inspect the Property and every part of it (including all samples of building materials, soil, and groundwater, and all books, records, and files of Trustor relating to the Property) and perform any acts and things as Beneficiary deems necessary or desirable to inspect, investigate, assess, and protect the security of this Deed of Trust, for the purpose of determining:

(a) the existence, location, nature, and magnitude of any past or present Release or threatened Release,

(b) the presence of any Hazardous Substances on or about the Property in violation of any Hazardous Substance Law, and

(c) the compliance by Trustor of every environmental provision of this Deed of Trust and every other Loan Document.

In furtherance of these purposes, without limitation of any of its other rights, Beneficiary may:

(i) obtain a court order to enforce Beneficiary's right to enter and inspect the Property under Civ. Code §2929.5, to which the decision of Beneficiary as to whether there exists a Release, threatened Release, any Hazardous Substances on or about the Property in violation of any Hazardous Substance Law, or a breach by Trustor of any environmental provision of this Deed of Trust or any other Loan Document, will be deemed reasonable and conclusive as between Trustor, Trustee, and Beneficiary; and

(ii) have a receiver appointed under Code Civ. Proc. §564 to enforce Beneficiary's right to enter and inspect the Property for Hazardous Substances.

All costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections, and examinations that Beneficiary or its agents, representatives, or employees may conduct, including the fees of the engineers, laboratories, contractors, consultants, and attorneys, will be paid by Trustor. All costs or expenses incurred by Trustee and Beneficiary pursuant to this subsection (including, without limitation, court costs, consultants fees, and attorneys' fees, whether incurred in litigation and whether before or after judgment) will bear interest at the Default Rate from the date they are incurred until they have been paid in full with interest at the Default Rate. Except as provided by law, any inspections or tests made by Beneficiary or its representatives, employees, and agents, will be for Beneficiary's purposes only and will not be construed to create any responsibility or liability on the part of Beneficiary to Trustor or to any other person. Beneficiary will have the right, but not the obligation, to communicate with any governmental authority regarding any fact or reasonable belief of Beneficiary that constitutes or could constitute a breach of any of Trustor's obligations under any environmental provision in this Deed of Trust or any Loan Document.

### Section 6.11 Remedies Cumulative.

All remedies of Beneficiary provided for in this Deed of Trust are cumulative and will be in addition to all other rights and remedies provided in the other Loan Documents or provided by law, including any banker's lien and right of offset. The exercise of any right or remedy by Beneficiary will not in any way constitute a cure or waiver of default, will not invalidate any act done pursuant to any notice of default, nor will it prejudice Beneficiary in the exercise of any of its rights unless, in the exercise of those rights, Beneficiary collects the total amount of the Indebtedness.

### Article 7. Security Agreement.

### Section 7.1 Grant of Security Interest.

Trustor also grants to Beneficiary a security interest in all of Trustor's right, title, and interest now owned or later acquired to the following property (collectively, "Collateral") now or later affixed to or located on the Property, or used in connection with the operation of the Property or the Improvements and all the proceeds of that property: the Personalty; the Fixtures; all machinery, equipment, engines, appliances, and fixtures for generating or distributing air, water, heat, electricity, light, fuel, or refrigeration, or for ventilating or sanitary purposes, or for the exclusion of vermin or insects, or for the removal of dust, refuse, or garbage; all wallbeds, wall safes, built-in furniture and installations, shelving, lockers, partitions, doorstops, vaults, motors, elevators, dumbwaiters, awnings, window shades, venetian blinds, light fixtures, fire hoses and brackets and boxes for them, fire sprinklers, alarm systems, draperies, drapery rods and brackets, mirrors, mantles, screens, linoleum, carpets and carpeting, plumbing, bathtubs, sinks, basins, pipes, faucets, water closets, laundry equipment, washers, dryers, iceboxes, refrigerators, heating units, stoves, ovens, ranges, dishwashers, disposals, water heaters, incinerators, furniture, fixtures, and furnishings; all communication systems; all specifically designed installations and furnishings; all building materials, supplies, and equipment now or later delivered to the Property; all office equipment, including, without limitation, all computers, computer systems, hardware and software, access codes, access keys, computer programs, file names, typewriters, duplicating machines, word processing equipment, adding machines, calculators, dictating equipment, printing presses, and related equipment; all inventories and supplies, including, without limitation, office supplies, soap, light bulbs, toilet paper, and linens; all clocks, television sets, radios, and other electronic or audio/video equipment; all podiums, microphones, movie and slide projectors and screens, and other property relating to conference and convention facilities; all security and cleaning deposits collected from any tenants or lessees of any part of the Property, all deposits collected from purchasers pursuant to contracts for sale of the Property or any portion of the Property; and, subject to the other provisions of this Deed of Trust, all proceeds of any fire and builders' risk insurance policy, or of any policy insuring the Property (and the contents of the Improvements) against any other perils, all awards made in eminent domain proceedings, or purchased in lieu of that, made with respect to the Property, and any compensation, award, payment, or relief given by any governmental agency or other source because of damage to the Property resulting from earthquake, flood, windstorm, or any

emergency or any other event or circumstance including terrorism. The specific enumerations in this Deed of Trust do not exclude the general.

The security interest also includes all additions to, substitutions for, changes in, or replacements of the whole or any part of these articles of property, together with all contract rights of Trustor in construction contracts, bonds, agreements for purchase and sale of the Property, all policies of insurance arising out of the improvement or ownership of the Property, and all accounts, contract rights, chattel paper, instruments, general intangibles, and other obligations of any kind now or later existing, arising out of, or in connection with the operation or development of the Property. The security interest also includes all rights now or later existing in all security agreements, leases, and other contracts securing or otherwise relating to any accounts, contract rights, chattel paper, instruments, general intangibles, or obligations; all causes of action and recoveries now or later existing for any loss or diminution in value of the Property; all proceeds of any of the Collateral; and, to the extent not otherwise included, all payments under insurance (whether Beneficiary is the loss payee), or any indemnity, warranty, or guaranty payable by reason of loss or damage to or otherwise with respect to any of the Collateral.

## Section 7.2 Remedies.

This Deed of Trust constitutes a security agreement with respect to the Collateral in which Beneficiary is granted a security interest. Beneficiary has all of the rights and remedies of a secured party under the California Uniform Commercial Code as well as all other rights and remedies available at law or in equity. Trustor agrees to execute and deliver on demand, and irrevocably constitutes and appoints Beneficiary the attorney-in-fact of Trustor to execute, deliver, and file, any security agreements, financing statements, continuation statements, or other instruments that Beneficiary may request to impose, perfect, or continue the perfection of the lien or security interest created by this Deed of Trust. On the occurrence of any Event of Default (taking into account any applicable period of grace or cure), Beneficiary will have the right to sell at any public or private sales as permitted by applicable law any of the Collateral that is personal property. Beneficiary will also have any other rights and remedies, whether at law, in equity, or by statute that are available to secured creditors. Any disposition may be conducted by an employee or agent of Beneficiary or Trustee. Any Person, including both Trustor and Beneficiary, will be eligible to purchase any part or all of the Collateral at any disposition.

## Section 7.3 Expenses.

Expenses of retaking, holding, and preparing for sale, selling, or the like will be borne by Trustor and will include Beneficiary's and Trustee's attorneys' fees and legal expenses. Trustor, on demand of Beneficiary, will assemble the Collateral and make it available to Beneficiary at the Property, a place deemed to be reasonably convenient to Beneficiary and Trustor. Beneficiary will give Trustor at least ten (10) days' prior written notice of the time and place of any public sale or other disposition of the Collateral or of the time of or after which any private sale or any other intended disposition is to be made. If the notice is sent to Trustor in the manner provided for the mailing of notices in this Deed of Trust, it is deemed reasonable notice to Trustor.

### Section 7.4 Fixture Filing.

(a) This Deed of Trust constitutes a financing statement filed as a fixture filing in the Official Records of the County Recorder of the county in which the Property is located with respect to all Fixtures included within the term Property as used in this Deed of Trust and with respect to any goods, Collateral, or other personal property that may now be or later become fixtures.

(b) It is understood and agreed that, to protect Beneficiary against the effect of Cal. U. Com. Code §9334, if any fixture owned by Trustor on the Property, or any part of any fixture, is replaced or added to, or any new fixture owned by Trustor is installed by Trustor, and the fixture is or may be subject to a security interest held by a seller or any other party, the following will apply:

(i) Trustor or any owner of all or any part of the Property will, before the replacement, addition, or installation of any fixture, obtain the prior written approval of Beneficiary, and give Beneficiary written notice that a security agreement with respect to the fixture has been or will be consummated, and the notice will contain the following information:

(A) a description of the fixtures to be replaced, added to, installed, or substituted;

(B) a recital of the location at which the fixtures will be replaced, added to, installed, or substituted;

(C) a statement of the name and address of the holder and amount of the security interest; and

(D) the date of the purchase of the fixtures.

Neither this subsection nor any consent by Beneficiary pursuant to this subsection will constitute an agreement to subordinate any right of Beneficiary in fixtures or other property covered by this Deed of Trust.

(ii) Beneficiary may at any time pay the balance due under the security agreement and the amount paid will be:

(A) secured by this Deed of Trust and will be a lien on the Property, enjoying the same priorities as this Deed of Trust,

(B) added to the amount of the Note or other obligation secured by this Deed of Trust, and

(C) payable on demand with interest at the Default Rate from the time of the payment; and if Trustor is in default for ten (10) days after demand, the entire principal sum secured with all unpaid interest will, at the Beneficiary's option, become immediately due, regardless of any contrary provision in this Deed of Trust or the Note; or Beneficiary will have the privilege of acquiring by assignment from the holder of the security interest any contract rights,

accounts receivable, chattel paper, negotiable or nonnegotiable instruments, or other evidence of Trustor's indebtedness for the fixtures, and, on acquiring these interests by assignment, will have the right to enforce the security interest as an assignee, in accordance with the California Uniform Commercial Code and other applicable law.

(iii) Whether Beneficiary has paid or taken an assignment of the security interest, if at any time Trustor is in default for a period of ten (10) days under the security agreement covering the fixtures, that default will be considered a material breach of Trustor's covenants under this Deed of Trust, and will, at Beneficiary's option, constitute a default under this Deed of Trust, and the principal sum secured will, at Beneficiary's option, become immediately due.

(iv) The provisions of subsections (ii) and (iii) above will not apply if the goods that may become fixtures are of at least equivalent value and quality as any property being replaced and if the rights of the party holding the security interest have been expressly subordinated, at no cost to Beneficiary, to the lien of this Deed of Trust in a manner satisfactory to Beneficiary, including, without limitation, at Beneficiary's option, providing to Beneficiary a satisfactory opinion of counsel that this Deed of Trust constitutes a valid and subsisting first lien on the fixtures that is not subordinate to the lien of the security interest under any applicable law, including, without limitation, the provisions of Cal. U. Com. Code §9334.

### Section 7.5 Assignment of Agreements.

(a) As partial security for the Loan, Trustor sells, assigns, transfers, sets over, and delivers to Beneficiary all of Trustor's right, title, and interest in all agreements, permits, and contracts pertaining to the use or operation of the Property, including, but not limited to, environmental impact reports; negative declarations; map approvals; grading and construction permits; conditional use permits; applications for all permits; management agreements; all development rights in the Property that Trustor may now or later acquire (including, without limitation, development rights arising in connection with any action by a governmental entity, including, by way of illustration, but not of limitation, inducement resolutions of county, municipal, or other governmental entities); agreements with contractors, suppliers, and construction managers; and agreements pertaining to the transfer of development rights or permitted floor area under applicable laws or ordinances (collectively, "Agreements"), as they may be amended or otherwise modified from time to time, including, without limitation, the right of Trustor to terminate any of the Agreements, to perform under them, and to compel performance and otherwise exercise all remedies under them, together with the immediate and continuing right to collect and receive all sums that may become due to Trustor, or which Trustor may now or later become entitled to demand or claim, arising or issuing out of the Agreements, including, without limitation, claims of Trustor for damages arising out of breach of or default under any of the Agreements and all rights of Trustor to receive proceeds of any insurance, indemnity, warranty, or guaranty with respect to any of the Agreements. However, so long as no Event of Default has occurred and is continuing, Trustor will have the right under a license granted to collect and retain all sums that may become payable to Trustor under the Agreements.

(b) Trustor covenants and agrees to punctually observe, perform, and discharge the obligations, terms, covenants, conditions, and warranties to be observed, performed, and discharged by it under the Agreements. Beneficiary, upon an Event

of Default, at its option and upon written notice to Trustor, will have the right to declare the assignment in this Section 9.5 to be absolute, and, in addition, Beneficiary will have the complete right then or later to exercise and enforce all of the rights and remedies provided by law.

(c) The acceptance by Beneficiary of the assignment in this Article 9.5, with all the rights, powers, privileges, and authority granted will not, prior to the exercise of Beneficiary's right to declare the assignment in this Article 9.5 to be absolute, obligate Beneficiary to assume any obligations under the Agreements or to take any action under them, or to expend any money or incur any expense or perform or discharge any obligation, duty, or liability under the Agreements, or to assume any obligation or responsibility for the nonperformance of the provisions by Trustor.

## Article 8. Assignment of Leases and Rents.

### Section 8.1 Assignment.

Trustor irrevocably assigns to Beneficiary:

(a) all of Trustor's right, title, and interest in all leases; licenses; agreements relating to the management, leasing, or operation of the Property; and other agreements of any kind relating to the use or occupancy of the Property, whether now existing or entered into after the date of this Deed of Trust ("Leases"), and

(b) the rents, issues, and profits of the Property, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases ("Payments"), for the purposes and on the terms and conditions below.

The term Leases will also include all guarantees of and security for the lessees' performance, and all amendments, extensions, renewals, or modifications that are permitted. This is a present and absolute assignment, not an assignment for security purposes only, and Beneficiary's right to the Leases and Payments is not contingent on, and may be exercised without, possession of the Property.

### Section 8.2 License.

Beneficiary confers on Trustor a license ("License") to collect and retain the Payments as they become due until the occurrence of an Event of Default. Upon an Event of Default, the License will be automatically revoked and Beneficiary may collect and retain the Payments without notice and without taking possession of the Property. Trustor irrevocably authorizes and directs the lessees under the Leases to rely on and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any rental or other sums that may at any time become due under the Leases, or for the performance of any of the lessees' undertakings under the Leases. The lessees will have no right or duty to inquire as to whether any Default has actually occurred or is then existing. Trustor relieves the lessees from any liability to Trustor by reason of relying on and complying with any notice or demand by Beneficiary.

### Section 8.3 Effect of Assignment.

The assignment will not impose on Beneficiary any duty to produce rents, issues, or profits from the Property, or cause Beneficiary to be:

(a) a "mortgagee-in-possession" for any purpose;

(b) responsible for performing any of the obligations of the lessor under any of the Leases; or

(c) responsible for any waste committed by lessees or any other parties, any dangerous or defective condition of the Property, or any negligence in the management, upkeep, repair, or control of the Property.

Beneficiary will not be liable to Trustor or any other party as a consequence of the exercise of the rights granted to Beneficiary under this assignment or the failure of Beneficiary to perform any obligation of Trustor arising under the Leases.

### Section 8.4 Leasing Covenants.

Trustor covenants and agrees as follows:

(a) At Trustor's sole cost to:

(i) perform all obligations of the lessor under the Leases and enforce performance by the lessees of their obligations under the Leases;

(ii) subject to the provisions of Section 10.4(b)(iv) below, enforce all remedies available to Trustor in case of default by the lessees under any of the Leases and prosecute and defend any action, arbitration, or other controversy relating to any of the Leases or to Trustor's interest in any of the Leases;

(iii) give Beneficiary prompt notice of any default that occurs under any of the Leases, whether by the lessees or Trustor;

(iv) exercise diligent, good-faith efforts to keep all portions of the Property leased at all times and at rentals not less than the fair market rental value;

(v) promptly upon execution, deliver to Beneficiary fully executed counterpart originals of the Leases; and

(b) except with Beneficiary's prior written consent, not to:

(i) enter into any Major Lease, enter into any Leases which are not expressly subordinate to this Deed of Trust, or enter into any Lease which is not on a form approved by Beneficiary, all after the date of this Deed of Trust;

(ii) execute any other assignment relating to any of the Leases or the Payments;

(iii) discount any rent or other sums due under the Leases or collect them in advance, other than to collect rent one (1) month in advance of the time when it becomes due;

(iv) terminate, modify, or amend any of the terms of the Leases or release or discharge the lessees from any obligations;

(v) consent to any assignment or subletting by any lessee; or

(vi) subordinate any of the Leases to any other deed of trust or encumbrance.

Any attempted action in violation of the provisions of Section 10.4(b) will be voidable at Beneficiary's election.

### Section 8.5 Application of Rents.

Beneficiary, in its sole discretion, may apply, or require the application of, all amounts received pursuant to the assignment to the payment of any one or more of the Obligations in any order that Beneficiary may elect.

### Section 8.6 Estoppel Certificates.

Within twenty (20) days after request by Beneficiary, Trustor will deliver to Beneficiary and to any party designated by Beneficiary estoppel certificates executed by Trustor and by each of the lessees, in recordable form, certifying:

(a) that the assignment and the Leases are in full force;

(b) the date of each lessee's most recent payment of rent;

(c) that there are no defenses or offsets outstanding, or stating those claimed by Trustor or lessees under the assignment or the Leases; and

(d) any other information reasonably requested by Beneficiary.

### Section 8.7 Remedies.

In addition to any other remedies in this Deed of Trust, Beneficiary will have the following rights and remedies upon the occurrence of an Event of Default:

(a) To receive the Payments and any other amounts arising or accruing under the Leases or from the Property;

(b) To collect, sue for, settle, compromise, and give releases for the Payments and pursue any remedies for the enforcement of the Leases or Trustor's rights under the Leases; and

(c) To take possession of the Property, and hold, manage, lease, and operate it on any terms and for any period of time that Beneficiary may deem proper and, either with or without taking possession of the Property, in its own name, make from time to time all alterations, renovations, repairs, or replacements that Beneficiary may deem proper.

## Section 8.8 Definitions.

The terms "lessor" and "lessors" as used in this Deed of Trust will include all owners, landlords, licensors, and other parties in a similar position with respect to the Leases. The terms "lessee" and "lessees" will include any tenants and licensees and any other parties in a similar position and will also include any guarantors of or other obligors under the Leases.

## Article 9. Miscellaneous.

## Section 9.1 Successor Trustee.

Beneficiary may remove Trustee or any successor trustee at any time and appoint a successor trustee by recording a written substitution in the county where the Property is located, or in any other manner permitted by law. Upon that appointment, all of the powers, rights, and authority of Trustee will immediately become vested in the successor.

## Section 9.2 Change of Law.

If any law is passed, after the date of this Deed of Trust, that deducts from the value of the Property, for the purposes of taxation, any lien on it, or changes in any way the laws now in force for the taxation of mortgages, deeds of trust, or debts secured by mortgage or deed of trust (other than laws imposing taxes on income) or the manner of the collection of any taxes so as to affect adversely the rights of Beneficiary as holder of the Note and Beneficiary under this Deed of Trust, the Indebtedness will become due at Beneficiary's option, exercised by thirty (30) days' notice to Trustor unless Trustor, within that thirty (30) day period, if permitted by law, assumes the payment of any tax or other charge imposed on Beneficiary for the period remaining until full payment by Trustor of the Indebtedness.

## Section 9.3 No Waiver.

No waiver by Beneficiary of any default or breach by Trustor will be implied from any omission by Beneficiary to take action on account of that default if the default persists or is repeated. Also, no express waiver will affect any default other than the default in the waiver and the waiver will be operative only for the time and to the extent stated. Waivers of any covenant, term, or condition in this Deed of Trust will not be construed as a waiver of any subsequent breach of the same covenant, term, or condition. The consent or approval by Beneficiary for any act by Trustor requiring further consent or approval will not be deemed to waive or render unnecessary the consent or approval for any subsequent similar act.

### Section 9.4 Abandonment.

Subject to any chattel mortgages, security agreements, or other liens on title that may exist with the consent of Beneficiary, or any provided for in this Deed of Trust, all Personalty that upon foreclosure of the Property is owned by Trustor and is used in connection with the operation of the Property will be deemed at Beneficiary's option to have become on that date a part of the Property and abandoned to Beneficiary in its then condition.

### Section 9.5 [omitted]

### Section 9.6 Survival.

The covenants and agreements in this Deed of Trust will bind and inure to the benefit of Beneficiary and Trustor and their successors and assigns. It is agreed that Beneficiary may assign to or grant a participation in any one or more lenders, free from any right of counterclaim, recoupment, or setoff by Trustor, Beneficiary's rights and obligations in whole or in part under the Loan Documents. Nothing in this Article 11.6 is intended to limit other provisions in the Loan Documents that by their terms survive the repayment of the Indebtedness or the termination of any Loan Document.

### Section 9.7 Severability.

If any term, provision, covenant, or condition of this Deed of Trust or any application of it is held by a court of competent jurisdiction to be invalid, void, or unenforceable, in whole or in part, all terms, provisions, covenants, and conditions of this Deed of Trust and all applications of it not held invalid, void, or unenforceable will continue in full force and will not be affected, impaired, or invalidated.

### Section 9.8 References to Foreclosure.

References in this Deed of Trust to "foreclosure" and related phrases are references to the appropriate procedure in connection with Trustee's private power of sale, any judicial foreclosure proceeding, and any deed given in lieu of foreclosure.

### Section 9.9 Joinder of Foreclosure.

If Beneficiary holds any other or additional security for the payment of any Indebtedness or performance of any Obligation, its sale or foreclosure, on any default in the payment or performance, in Beneficiary's sole discretion, may be prior to, subsequent to, or joined or otherwise contemporaneous with any sale or foreclosure. In addition to the rights in this Deed of Trust specifically conferred, Beneficiary, at any time and from time to time, may exercise any right or remedy now or later given by law to beneficiaries under deeds of trust generally, or to the holders of any obligations of the kind secured.

### Section 9.10 Rights of Beneficiary and Trustee.

At any time and from time to time, without liability and without notice, and without releasing or otherwise affecting the liability of any person for payment of any Indebtedness,

(a) Beneficiary, at its sole discretion and only in writing, may extend the time for or release any Person now or later liable for payment of any Indebtedness, or accept or release additional security, or subordinate the lien or charge of this Deed of Trust, or

(b) Trustee, on written request of Beneficiary and presentation of the Note, any additional notes secured by this Deed of Trust, and this Deed of Trust for endorsement, may reconvey any part of the Property, consent to the making of any map or plat of it, join in granting any easement on it, or join in any agreement of extension or subordination.

On Beneficiary's written request and surrender of the Note, any additional notes secured by this Deed of Trust, and this Deed of Trust to Trustee for cancellation, and on payment to Trustee of its fees and expenses, Trustee will reconvey without warranty the then trust property. The recitals in any reconveyance will be conclusive proof of the truthfulness of them, and the grantee in any reconveyance may be described as the person legally entitled.

### Section 9.11 Copies.

Trustor will promptly give to Beneficiary copies of all

(a) notices of violation that Trustor receives from any governmental agency or authority, and

(b) notices of default that Trustor receives under any agreement relating to the borrowing of money by Trustor from any Person.

### Section 9.12 ERISA Compliance.

Trustor will at all times comply with the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), with respect to any retirement or other employment benefit plan to which it is a party as employer. As soon as possible after Trustor knows, or has reason to know, that any Reportable Event (defined in ERISA) with respect to any plan of Trustor has occurred, it will furnish to Beneficiary a statement in writing setting forth details about the Reportable Event and the action, if any, that Trustor proposes to take, together with a copy of the notice of the Reportable Event furnished to the Pension Benefit Guaranty Corporation. In addition, if at any time the loan evidenced by the Note is deemed in whole or in part to be a transaction prohibited by the provisions of ERISA, Trustor will immediately reimburse Beneficiary on demand for all taxes levied against or costs incurred by Beneficiary or Trustee by reason of the Reportable Event.

### Section 9.13 Subordination.

At the option of Beneficiary, this Deed of Trust will become subject and subordinate, in whole or in part (but not with respect to priority of entitlement to any insurance proceeds, damages, awards, or compensation resulting from damage to the Property or condemnation or exercise of power of eminent domain), to any contracts of sale or any leases of the Property on the execution by Beneficiary and recording of a unilateral declaration to that effect in the official records of the county and state where the Property is located. Beneficiary may require the issuance of any title insurance endorsements to the Title Policy in connection with any subordination that Beneficiary, in its judgment, determines are appropriate, and Trustor will be obligated to pay any cost or expense incurred in connection with the issuance.

### Section 9.14 No Merger.

So long as any of the Indebtedness remains unpaid or Beneficiary has any further obligation under the Loan Documents, unless Beneficiary otherwise consents in writing, the fee estate of Trustor in the Property or any part of it will not merge, by operation of law or otherwise, with any leasehold or other estate in the Property or any part of it, but will always be kept separate and distinct, regardless of the union of the fee estate and the leasehold or other estate in Trustor or any other Person.

### Section 9.15 Inspection of Property.

Beneficiary is authorized by itself or its agents, employees, or workers, to enter at any reasonable time on prior written notice to Trustor on any part of the Property for the purpose of inspecting it, and for the purpose of performing any of the acts it is authorized to perform under the terms of this Deed of Trust. Trustor agrees to cooperate with Beneficiary to facilitate any inspection.

### Section 9.16 Performance by Trustor.

Trustor will faithfully perform every covenant to be performed by Trustor under any lien or encumbrance, including, without limiting the generality of this Deed of Trust, mortgages, deeds of trust, leases, declarations or covenants, conditions and restrictions, and other agreements that affect the Property, in law or in equity, that Beneficiary reasonably believes may be prior and superior to or on a parity with the lien or charge of this Deed of Trust. A breach of or a default under any lien or encumbrance that exists after any applicable grace period in the pertinent instrument has expired without that breach or default having been cured, will constitute an Event of Default under this Deed of Trust. If Trustor fails to do so, Beneficiary, without demand or notice and in its sole judgment, may do any things required by Trustor by any of the provisions in this Deed of Trust and incur and pay expenses in connection with that. Nothing in this section affects Trustor's obligations pursuant to Sections 5.2 and 5.3 of this Deed of Trust or limits Beneficiary's rights.

### Section 9.17 Personalty Security Instruments.

Trustor agrees that if Beneficiary at any time holds additional security for any obligations secured by this Deed of Trust, it may enforce the terms of it or otherwise realize on it, at its option, either before or concurrently or after a sale is made under this Deed of Trust, and may apply the proceeds on the Indebtedness secured without affecting the status or waiving any right to exhaust any other security, including the security under this Deed of Trust, and without waiving any breach or default or any right or power, whether exercised under this Deed of Trust or in any other security.

### Section 9.18 Suits to Protect Property.

Trustor agrees to appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or any additional or other security for the obligations secured, the interest of Beneficiary or the rights, powers, or duties of Trustee, and to pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, in any action or proceeding in which Beneficiary or Trustee may appear or be made a party, including, but not limited to, foreclosure or other proceeding commenced by those claiming a right to any part of the Property under subordinate liens, in any action to partition or condemn all or part of the Property, whether pursued to final judgment, and in any exercise of the power of sale in this Deed of Trust, whether the sale is actually consummated.

### Section 9.19 Junior Liens.

Trustor agrees:

(a) that as of the date of this Deed of Trust there are no encumbrances to secure debts junior to this Deed of Trust and

(b) that there are to be none as of the date when this Deed of Trust becomes of record.

### Section 9.20 Further Advances.

On the request of Trustor or its permitted successors in ownership of the Land, Beneficiary may, at its option, at any time before full payment of the Indebtedness, make further advances to Trustor or the successors in ownership, with interest and late charges to be secured by this Deed of Trust. However, the amount of principal secured by this Deed of Trust and remaining unpaid will not at the time of and including any advance exceed the original principal sum secured. Also, if Beneficiary, at its option, makes a further advance or advances, Trustor or the successors in ownership agree to execute and deliver to Beneficiary a note, payable on or before the maturity of the Indebtedness secured and bearing any other terms that Beneficiary will require.

### Section 9.21 Waiver of Statute of Limitations.

The pleading of any statute of limitations as a defense to any obligations secured by this Deed of Trust is waived, to the fullest extent permissible by law.

### Section 9.22 Charges for Statements.

Trustor agrees to pay Beneficiary's reasonable charge, to the maximum amount permitted by law, for any statement regarding the obligations secured by this Deed of Trust requested by Trustor or on its behalf.

### Section 9.23 Entire Agreement.

This Deed of Trust and the other Loan Documents set forth the entire understanding between Trustor and Beneficiary and they will not be amended except by a written instrument duly executed by each of Trustor and Beneficiary. Any previous representations, warranties, agreements, and understandings among the parties regarding the subject matter of the Loan or the Loan Documents, whether written or oral, are superseded by this Deed of Trust and the other Loan Documents.

### Section 9.24 Incorporation.

All terms of the Loan Documents are incorporated in this Deed of Trust by this reference. All persons who may have or acquire an interest in the Property will be deemed to have notice of the terms of the Loan Documents and to have notice, if provided for, that the rate of interest on one or more Obligations may vary from time to time.

### Section 9.25 Waiver of Marshaling Rights.

Trustor, for itself and for all parties claiming through or under Trustor, and for all parties who may acquire a lien on or interest in the Property, waives all rights to have the Property or any other property that is now or later may be security for any Obligation ("Other Property") marshaled on any foreclosure of this Deed of Trust or on a foreclosure of any other security for any of the Obligations. Beneficiary will have the right to sell, and any court in which foreclosure proceedings may be brought will have the right to order a sale of, the Property and any of the Other Property as a whole or in separate parcels, in any order that Beneficiary may designate.

### Section 9.26 Acceptance of Trust; Powers and Duties of Trustee.

Trustee accepts this trust when this Deed of Trust is recorded. From time to time on written request of Beneficiary and presentation of this Deed of Trust for endorsement, and without affecting the personal liability of any person for payment of any indebtedness or the performance of any obligations, Trustee may, without liability and without notice:

(a) reconvey all or any part of the Property;

(b) consent to the making of any map or plat; and

(c) join in any grant of easement, any declaration of covenants, conditions, and restrictions, any extension agreement, or any agreement subordinating the lien or charge of this Deed of Trust.

Except as may be required by applicable law, Trustee or Beneficiary may from time to time apply to any court of competent jurisdiction for aid and direction in the execution of the trust and the enforcement of the rights and remedies available, and may obtain orders or decrees directing, confirming, or approving acts in the execution of the trust and the enforcement of the remedies. Trustee has no obligation to notify any party of any pending sale or any action or proceeding, including, without limitation, actions in which Trustor, Beneficiary, or Trustee will be a party, unless held or commenced and maintained by Trustee under this Deed of Trust. Trustee will not be obligated to perform any act required of it under this Deed of Trust unless the performance of the act is requested in writing and Trustee is reasonably indemnified and held harmless against any loss, cost, liability, or expense.

### Section 9.27 Releases, Extensions, Modifications, and Additional Security.

Without notice to or the consent, approval, or agreement of any persons or entities having any interest at any time in the Property or in any manner obligated under the Obligations ("Interested Parties"), Beneficiary may, from time to time, release any person or entity from liability for the payment or performance of any Obligation; take any action or make any agreement extending the maturity or otherwise altering the terms or increasing the amount of any Obligation; or accept additional security or release the Property or other security for any Obligation. None of these actions will release or reduce the personal liability of any of the Interested Parties, or release or impair the lien of this Deed of Trust, or the priority of it on the Property. However, no action taken or agreement made by Beneficiary to extend the maturity or otherwise alter the terms or increase the amount of any Obligation will be binding on Trustor without Trustor's consent.

### Section 9.28 Reconveyance.

Upon the payment and performance of all Obligations, including, without limitation, Beneficiary's receipt of all sums owing and outstanding under the Note, Beneficiary will deliver to Trustee a written request for reconveyance, and will surrender to Trustee for cancellation this Deed of Trust and any note or instrument evidencing the Obligations. However, Beneficiary will have no obligation to deliver the written request and documents until Beneficiary has been paid by Trustor, in immediately available funds, all escrow, closing, and recording costs, the costs of preparing and issuing the reconveyance, and any trustee's or reconveyance fees. On Trustee's receipt of the written request by Beneficiary and the documents, Trustee will reconvey, without warranty, the Property or that portion then held. To the extent permitted by law, the reconveyance may describe the grantee as the person or persons legally entitled and the recitals of any matters or facts in any reconveyance will be conclusive proof of the truthfulness of them. Neither Beneficiary nor Trustee will have any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance. When the Property has been fully reconveyed, the last reconveyance will operate as a reassignment of all future rents, issues, and profits of the Property to the person legally entitled.

### Section 9.29 Subrogation.

Beneficiary will be subrogated to the lien of all encumbrances, whether released of record, paid in whole or in part by Beneficiary pursuant to this Deed of Trust, or by the proceeds of any loan secured by this Deed of Trust.

### Section 9.30 Obligations of Trustor, Joint and Several.

If more than one person has executed this Deed of Trust as "Trustor," the obligations of all those persons will be joint and several.

### Section 9.31 Rules of Construction.

When the identity of the parties or other circumstances make it appropriate, the singular number includes the plural.

### Section 9.32 Successors in Interest.

The terms, covenants, and conditions in this Deed of Trust will be binding on and inure to the benefit of the heirs, successors, and assigns of the parties.

### Section 9.33 No Offset.

Trustor will pay to Beneficiary all amounts owing under the Note, this Deed of Trust, or any of the other Obligations without deduction, offset, or counterclaim of any kind.

### Section 9.34 Governing Law.

The parties expressly agree that this Deed of Trust (including, without limitation, all questions regarding permissive rates of interest) will be governed by or construed in accordance with the laws of California and federal law, where applicable.

In Witness hereof, Trustor has executed this Deed of Trust as of the day and year first above written.

TRUSTOR:

STURMER PIPPIN INVESTMENTS, LLC, a Delaware Limited Liability Company

By:  _____
        Robert Shapiro, Manager

[All-purpose acknowledgment attached]

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )
County of *LOS ANGELES*      )

On *SEPTEMBER 16, 2016* before me, *KRISTINE W. LAUENGCO, a notary public,*
     Date                       *Here Insert Name and Title of the Officer*

personally appeared _____ *ROBERT SHAPIRO* _____
                             *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                *Signature of Notary Public*

KRISTINE W. LAUENGCO
Commission # 2121932
Notary Public - California
Los Angeles County
My Comm. Expires Aug 26, 2019

*Place Notary Seal Above*

━━━━━━━━━━━━━━━━━━ **OPTIONAL** ━━━━━━━━━━━━━━━━━━
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: *SECOND PRIORITY DEED OF TRUST* Document Date: _____
Number of Pages: *34*    Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____          Signer's Name: _____
☐ Corporate Officer — Title(s): _____          ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General          ☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact          ☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator          ☐ Trustee ☐ Guardian or Conservator
☐ Other: _____          ☐ Other: _____
Signer Is Representing: _____          Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 21 OF TRACT NO. 8683, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 110, PAGES 32 THROUGH 35, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4359-021-016 (REF:10100 W. Sunset)

PARCEL 2:

PARCEL 2A:

LOT 1 OF TRACT NO. 8252, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 183, PAGES 23 AND 24, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THAT PORTION OF SAID LAND INCLUDED WITHIN CAROLWOOD DRIVE, FORMERLY MONOVALE DRIVE, AS SHOWN ON TRACT MAP 8683, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 110, PAGES 32 THROUGH 35, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS VACATED BY RESOLUTION TO VACATE NO. 03-1400862, RECORDED JULY 8, 2004, AS INSTRUMENT NO. 04-1743553, OF OFFICIAL RECORDS.

APN: 4359-021-017 (REF: 10060 W. Sunset)

PARCEL 2B:

LOT 2 OF TRACT NO. 8252, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 183, PAGES 23 AND 24, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2C:

THAT PORTION OF LOT 1 OF TRACT NO. 8252, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 183, PAGES 23 AND 24, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WHICH IS INCLUDED WITHIN THAT PORTION OF CAROLWOOD DRIVE, FORMERLY MONOVALE DRIVE, AS SHOWN ON TRACT MAP 8683, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 110, PAGES 32 THROUGH 35, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS VACATED BY RESOLUTION TO VACATE NO. 03-1400862, RECORDED JULY 8, 2004, AS INSTRUMENT NO. 04-1743553, OF OFFICIAL RECORDS.

APN: 4359-021-018 (REF: 141 S. Carolwood)

# Exhibit C

**To:**       Bobshap1@aol.com[Bobshap1@aol.com]; kenforgot@aol.com[kenforgot@aol.com]
**Cc:**       Scott Schwartz[ScottS@woodbridgeinvestments.com]
**From:**    Dayne Roseman[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=309DF68A0492452A9B1F19E469A1773C-DANER]
**Sent:**     Wed 12/31/2014 5:28:06 PM (UTC)
**Subject:**  RE: (no subject)

Ken,

I am available if you need anything. My direct line is 818-530-0287.

**From:** Bobshap1@aol.com [mailto:Bobshap1@aol.com]
**Sent:** Wednesday, December 31, 2014 5:49 AM
**To:** kenforgot@aol.com
**Cc:** Scott Schwartz; Dayne Roseman
**Subject:** (no subject)

Ken,

Hope all is well. Just to let you know Ivan has left the co to pursue his own deal. Feel free to speak to my stepson Scott or Dayne for any of your structured settlement needs.

Scott or Dayne, take good care of my good friend Ken Halbert

Hope you have a nice trip and a Happy New year


Bob

# Exhibit D

**To:**      kenforgot@aol.com[kenforgot@aol.com]
**Cc:**      Laura Gee[lgee@woodbridgerealtyco.com]
**From:**    Bob[bobshap1@aol.com]
**Sent:**    Sat 2/13/2016 10:23:15 PM (UTC)
**Subject:** Re: Aspen condo

In Australia today bora bora was great

We have a condo in aspen he can use

I copied Laura on this email and she can make arrangements for a key

Laura will you take good care of my good friend kens son


Bob Shapiro

On Feb 14, 2016, at 9:18 AM, kenforgot@aol.com wrote:

> Hi Bob
>
> I'm sure you're having a great time in Bora Bora.
>
> A few times in the past you offered your condo to me in Aspen.
>
> My son Jeff will be in the area and I was wondering if it's available
>
> either from Feb 20 thru 23rd or Feb 25 thru 28th?
>
> Thanks
> Kenny

# Exhibit E

**To:** kenforgot@aol.com[kenforgot@aol.com]
**Cc:** Ivan Acevedo[IvanA@woodbridgeinvestments.com]; Scott Schwartz[ScottS@woodbridgeinvestments.com]
**From:** Bobshap1@aol.com[Bobshap1@aol.com]
**Sent:** Thur 7/19/2012 7:49:14 PM (UTC)
**Subject:** Re: (no subject)

sold a pleasure doing business with you

In a message dated 7/19/2012 12:47:42 P.M. Pacific Daylight Time, kenforgot@aol.com writes:

Done - we've got a deal!

-----Original Message-----
From: Bobshap1 <Bobshap1@aol.com>
To: kenforgot <kenforgot@aol.com>
Cc: ivana <ivana@woodbridgeinvestments.com>
Sent: Thu, Jul 19, 2012 3:34 pm
Subject: Re: (no subject)

for you I make special price

6.5

In a message dated 7/19/2012 12:31:54 P.M. Pacific Daylight Time,
kenforgot@aol.com writes:
What would the best discount rate be on this one?

-----Original Message-----
From: Bobshap1 &lt;Bobshap1@aol.com&gt;
To: kenforgot &lt;kenforgot@aol.com&gt;
Cc: ivana &lt;ivana@woodbridgeinvestments.com&gt;
Sent: Thu, Jul 19, 2012 2:41 pm
Subject: (no subject)

Ken,

Might bridge this if not sold in next few days unless you want to buy it?

Summer is slow so we usually have to bridge more deals and then Sept everyone's back buying. Been like this every year.

CNA Life Insurance Company "A-" rating (939509) -

One (1) lump sum payment as follows: $340,000.00 due on June 11th, 2016.

Investment: $284,434.85 to yield 5%

Let us know?

# Exhibit F

**To:**      ninasus33@aol.com[ninasus33@aol.com]
**From:**    Bobshap1@aol.com[Bobshap1@aol.com]
**Sent:**    Tue 5/28/2013 8:07:49 PM (UTC)
**Subject:** Fwd: may interest

can you explain this

---

From: kenforgot@aol.com
To: bobshap1@aol.com
Sent: 5/28/2013 1:06:30 P.M. Pacific Daylight Time
Subj: may interest

Bob

Two things:

1.Today I rcvd ck# 17038 in the amount of $1875.00 which represents May interest on the 900k bridge which according to my records has a $225k
   balance. If my records are correct the interest should be $1937.50 leaving a balance in the amount of $62.50

2. I rcvd ck# 16971 on May 20 for interest based on 100k. Interest should have been based on 125k leaving a balance of $104.13.

Total balance due: $166.63, please advise.

I hope your having a good trip!

# Exhibit G

| | |
|---|---|
| **To:** | Nina Pedersen[Ninasus33@aol.com] |
| **From:** | Bob Shapiro[bobshap1@aol.com] |
| **Sent:** | Wed 9/4/2013 7:33:19 PM (UTC) |
| **Subject:** | Fwd: august interest |

Is he right

Bob Shapiro

Begin forwarded message:

> **From:** kenforgot@aol.com
> **Date:** September 4, 2013, 12:31:44 PM PDT
> **To:** bobshap1@aol.com
> **Subject: august interest**

Bob

I hope your trip was as good as mine and now it's back to business. I found descrepancies on both the 500k & the 800k bridges as follows:

1. 500k bridge ck # 18904 - 500k @ 10% for 26 days = $3611.11 rcvd $3494.66 Short $116.45

2. 800k bridge ck # 18886 - beginning balance 400k @ 10% for 20 days = $2222.22
   balance 320K @ 10% for 3 days =    266.67  rcvd 80K Aug 20
   balance 240k @ 10% for 6 days =    400.00   "   "   "   23
   balance 120k @ 10% for 1 day =      33.33   "  120K "   29
   balance
   Total Aug Int Due         =  $2922.22
   Total Aug Rcvd               2494.73
   Aug Int Short                 427.49

Total August int short $543.94.

I believe I'm computing correctly. Please let me know if not.

Kenny

# Exhibit H

**To:** Robert Shapiro[Bobshap1@aol.com]
**Cc:** David Golden[dgolden@woodbridgeinvestments.com]
**From:** Robert Reed[rreed@woodbridgeinvestments.com]
**Sent:** Wed 4/13/2016 8:59:23 PM (UTC)
**Subject:** Jeff Halbert Finders Agreement
Finder's Fee Agrmnt for Sellers (DRAFT).docx

Hi Bob,

Attached is a draft of the finder fee agreement for Jeff Halbert in connection with the Owlwood Estates property. If acceptable to you as drafted, I will circulate a copy for signature.

Thanks,

RObert

Robert N. Reed, Esq.*
Associate Counsel

**WOODBRIDGE GROUP OF COMPANIES, LLC**
54 Hartford Turnpike
Tolland, CT 06084
office 860.454.0560      mobile 203.583.2033      fax 860.454.0823
rreed@woodbridgeinvestments.com
www.woodbridgeinvestments.com

*Licensed in Connecticut only

Disclaimer Required by IRS Rules of Practice: Any discussion of tax matters contained herein is not intended or written to be used, and cannot be used, for the purpose of avoiding any penalties that may be imposed under Federal tax laws.

Confidentiality: The information contained in this e-mail message is intended only for the use of the individual or entity named above and is privileged and confidential. Any use, dissemination, distribution, or copy of this communication other than to the individual or entity named above is strictly prohibited. If you have received this communication in error, please notify me immediately and delete the message.

<p style="text-align:center"><strong>NON-EXCLUSIVE FINDER'S FEE AGREEMENT</strong></p>

This agreement is dated April 8, 2016, and is between Jeffrey Halbert, *an individual* ("**Finder**"), and STURMER PIPPIN INVESTMENTS, LLC, *a Delaware limited liability company* ("**Seller**").

Seller anticipates to be the sole owner of certain real property located at 10060 West Sunset Boulevard; 10100 West Sunset Boulevard; and 141 South Carolwood Drive, Los Angeles, California 90077 (collectively, the "**Property**"). In the future, Seller may elect to consummate a sale, transfer, or exchange of its entire interest in the Property for a sum and on terms acceptable to Seller in its sole discretion ("**Sale**"). Finder wants the non-exclusive opportunity to earn a fee if such Sale is made to a purchaser that was first presented and introduced to Seller, by Finder.

Finder and Seller hereby agree:

**1. FINDER'S FEE.** Finder will be entitled to 1% of the purchase price ("**Fee**") if - *and only if* - the purchasing party to such Sale: (a) had no business dealing or relationship with Seller prior to the date of this agreement; <u>and</u> (b) was procured, presented, and introduced directly by Finder to Seller in writing subsequent to this agreement and prior to any Sale ("**Prospect**"). The Fee shall be earned upon and payable out of Seller's receipt of the purchase price, when, as, and if the Sale closes and title to the Property passes to and vests completely in such Prospect. It is understood and agreed that if for any reason a Sale does not consummate between Seller and a Prospect, then no amount will be due, earned, or payable and Seller is released from any claims whatsoever in connection with any Sale.

**2. NON-EXCLUSIVITY.** Finder's attempt to find a purchaser for the Property is non-exclusive. Seller will continue to attempt to find a purchaser for the Property through its own efforts and through real estate brokers. It is understood that Finder shall not be entitled to payment under this agreement if the Property is sold through the Seller's own efforts, or through the efforts of others so retained by the Seller.

**3. WARRANTIES AND ACCURATE INFORMATION.** Seller represents that all information furnished to Finder is complete and accurate to the best of Seller's knowledge in all material respects. Seller acknowledges that all information supplied to Finder concerning the Property will be relied on by Finder in procuring potential Prospects. Finder will make no independent investigation with respect to any of the information supplied by Prospect or Seller. NO WARRANTIES ARE MADE BY FINDER, PROSPECT, OR SELLER FOR THE ACCURACY OF THE INFORMATION PRESENTED.

**4. INDEPENDENT CONTRACTOR.** Under this agreement, Finder is an independent contractor of Seller. Finder's entire activity under this agreement is limited to arranging an introduction between the Company and a Prospect. Finder is not an agent for the Company, does not represent the Company in any capacity, and does not owe the fiduciary duties of an agent nor does it have the licensure obligations of a broker. Further, this agreement does not, and may not be construed to create any association, partnership, joint venture, employee or agency relationship between Finder and Company. Finder has no actual authority (and shall not hold itself out as having authority) to bind Company and Finder shall not make any agreements or representations on Company's behalf without Company's prior written consent. Without limiting the above, Finder will not be eligible to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits or any other fringe benefits or benefit plans offered by Company to its employees, and Company will not be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions, including unemployment or disability, or obtaining worker's compensation insurance on Finder's behalf. Finder shall be responsible for, and shall indemnify Company against, all such taxes or contributions, including penalties and interest. Any persons employed or engaged by Finder in connection with the performance of Finder's obligations hereunder shall be Finder's employees or contractors and Finder shall be fully responsible for them and indemnify Company against any claims made by or on behalf of any such employees or contractors.

**5. PROGRESS UPDATES AND TRANSPARENCY.** Seller agrees to keep Finder informed of the progess of a pending transaction with the Prospect of the property up until the day of Closing.

**6. NOTIFICATION OF TRANSACTION.** Seller agrees to notify Finder of the date, time and location of a closing of any Sale at least 10 days prior to such closing.

**7. INTEREST ON UNPAID COMPENSATION.** Seller hereby agrees that any and all moneys due Finder that are not paid when due will bear interest at the maximum interest rate allowed by law, unless otherwise agreed upon in writing prior to transaction.

**8. NO VERIFICATION.** Seller understands and agrees that Finder will make no independent investigation or verification of any information supplied to Sellers by Prospect or Finder and in no event shall Finder be required to participate in any evaluation of the Property, including, without limitation, any accounting, inventory, appraisal, audit, verification or other similar evaluation for Seller, and Seller hereby expressly releases and discharges Finder from any responsibility or liability in connection with any such evaluation. Seller hereby accepts sole and final responsibility for any investigation or verification of any and all information furnished to Seller by Prospect or by Finder and for the evaluation of the Property and for the determination of the price and terms. Further, Seller hereby expressly releases and discharges Finder from any responsibility or liability in connection with the integrity or correctness or accuracy of any financial information and/or any and all other information furnished by the Prospect of the property and/or any and all representatives of the seller and/or Finder.

**9. APPLICABLE LAW.** Seller understands and acknowledges and agrees that Seller has solicited Finder's services and has applied to Finder at Finder's place of business in Orange County, Florida, to avail itself of Finder's services and that all amounts due to Finder shall be payable, in certified funds, to Jeffrey Halbert, Orange County, Florida USA. The performance and construction of this Agreement shall be in Orange County, Florida, and shall be governed by the laws of the State of Florida.

**10. ENFORCEABILITY.** If any term, provision or condition of this Agreement shall be held to be invalid, void or unenforceable, the remainder of the provisions hereof, shall remain in full force and effect and this Agreement shall be construed as if such invalid, void or unenforceable provision had not been contained herein. If any term, provision or condition of this Agreement is waived by Finder, such does not waiver any additional term, provision or condition.

**11. ENTIRE AGREEMENT.** This Agreement sets forth the entire agreement and understanding between the parties and cannot be modified, amended, supplemented or rescinded except in writing signed by both parties.

**FINDER:**                                          **SELLER:**

                                                      STURMER PIPPIN INVESTMENTS, LLC

By: _____                        By: _____

Name: _____Jeffrey Halbert_____                      Name: _____

Date: _____3/31/2016_____                        Date: _____