## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| WOODBRIDGE GROUP OF | ) |
| COMPANIES, LLC, *et al.,*[1] | ) |
| | ) Case No. 17-12560 (JKS) |
| Remaining Debtors. | ) |
| | ) (Jointly Administered) |
| ——————————————— | ) |
| MICHAEL GOLDERBG, in his capacity | ) |
| as Liquidating Trustee of the | ) |
| WOODBRIDGE LIQUIDATION TRUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Adversary Proceeding No. 19-51027 (JKS) |
| v. | ) |
| | ) |
| KENNETH HALBERT, | ) |
| | ) |
| Defendant. | ) **Re: D.I. No. 53** |
| ——————————————— | ) |

### DEFENDANT KENNETH HALBERT'S OPPOSITION TO PLAINTIFF'S
### MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Kenneth Halbert ("Defendant" or "Halbert"), by and through his undersigned counsel,

files the following Opposition ("Opposition") to *Plaintiff's Motion for Leave to File Amended*

*Complaint*.  In Support of the Opposition, the Defendant respectfully submits as follows:

### PRELIMINARY STATEMENT

Over twenty (20) months after filing the Complaint For Avoidance and Recovery of

Avoidable Transfers [D.I. No. 1] ("Complaint"), (a copy of the Complaint is attached hereto as

Exhibit A) the Plaintiff seeks to amend the Complaint, by filing a Motion for Leave to File

Amended Complaint (the "Motion for Leave") (D.I. No. 53).  All of the new causes of actions and

the allegations supporting such causes of action contained in the proposed amended complaint

attached to the Motion for Leave as Exhibit 1 (the "Amended Complaint") (a copy of the Amended

Complaint is attached hereto as Exhibit B) are time barred and do not "relate back to" the causes

of action and the factual allegations supporting the alleged course of conduct in the Complaint.

Simply put, the new causes of action are just that – brand new.  Not only are these new causes of

action time barred, there is no excuse for the Plaintiff's late filing as all information and documents

upon which the new allegations and new claims are based were in the possession of the Plaintiff

nearly 10 months prior to when the Complaint was filed – which is now almost 2 1/2 years ago.

See the Declaration of Thomas P. Jeremiassen in Support of the Motion for Leave ("Jeremiassen

Decl.) ¶¶ 1-4.  A copy of the Jeremiassen Decl. is attached hereto as Exhibit C.  Nevertheless, the

Plaintiff seeks to pursue the Amended Complaint which attempts to recover over 100  new

transfers totaling $37,318,500, which were not sought in the Complaint and are based upon new

facts and legal theory.

## I.FACTUAL BACKGROUND

1.      On December 4, 2017, certain of the Debtors commenced voluntary cases under

chapter 11 of the Bankruptcy Code ("Petition Date").  Other of the Debtors filed voluntary chapter

11 cases either on the December 4, 2017, or within the following four months.

2.      Over ten (10) months prior to the filing of the Complaint, the Plaintiff had access

to all of the information and documents that he now relies upon to support the amendments to the

Complaint set forth in the Amended Complaint.  Jeremiassen Decl. ¶¶ 1-4.

3.      Specifically, on February 15, 2018, the Plaintiff was appointed as the Liquidating

Trustee of the Woodbridge Liquidation Trust.  In such capacity, the Plaintiff ascertained the power

to pursue "chapter 5 actions".  DSI, on or about the same date was appointed as the restructuring

financial advisors to the Debtors and the Plaintiff. Prior to such date, DSI supported the Chief Restructuring Officer to the Debtors. *Id.* at ¶ 2.

4.      To that end, as of February 15, 2018, (to the extent it was not familiar prior), the Plaintiff and its advisor, DSI, had full knowledge and control of the Debtors' books and records, along with control over the Debtors' remaining day-to-day operations and financial affairs and was responsible for implementing a liquidation plan. Pursuant to this authority and plan, the "claw-back" actions were pursued, including the Complaint. *Id.* The Plaintiff contends that he only learned of certain new information that gave rise to causes of action in the Amended Complaint (specifically certain emails and ledgers of the Debtors' ledgers (see, Motion ¶¶ 3, 4, 15, 17, 27). Such statement is patently false.

5.      The Plaintiff filed the Complaint on December 1, 2019. [D.I. No. 1]. The Complaint sought to avoid actual and constructive fraudulent transfers allegedly made to Halbert in the total amount of up to $1,083,679.31 for four-year transfers under the legal theory that Halbert was an "investor" in the Ponzi Scheme and received "fictious profits." Complaint, ¶¶ 14, 15, Exhibit A. Exhibit A to the Complaint identifies the specific transfers the Plaintiff sought to avoid by the Complaint.

6.      The two-year statute of limitation period on the Plaintiff's ability to assert claims under 11 U.S.C. §§ 544 and 548 expired on December 4, 2019. *See* 11 U.S.C. § 546(a).

7.      On January 15, 2020, Halbert filed his *Answer to Complaint* [D.I. No. 4].

8.      On September 4, 2020, the *Scheduling Order* was entered. [D.I. No. 23].

9.      On October 27, 2020, the Plaintiff and Halbert signed the *Stipulation Regarding Appointment of Mediator* [D.I. No. 26], appointing Ian Connor Bifferato, Esq. ("Bifferato") to serve as mediator in the Adversary Proceeding.

10.     Mediation Briefs and Supplement Mediation Briefs were prepared by the parties and the parties participated in mediation with Bifferato on March 17, 2021 and June 14, 2021.

11.     At no time has discovery been open in this case or conducted and at no time did Halbert produce to the Plaintiff any information or documentation that the Plaintiff used to support a basis for the new causes of action in the Amended Complaint.

12.     On July 12, 2021, the Motion for Leave was filed through which the Plaintiff seeks to avoid transfers in the Amended Complaint pursuant to 11 U.S.C. §§ 544 and 548 which were not sought in the Complaint.  Specifically, the Amended Complaint adds claims to avoid hundreds of newly identified transfers totaling $37,318,500 over four years for repayments of principal (Amended Complaint, ¶ 17, Exhibit 1)("New 4 Year Transfers") and avoid hundreds of newly identified transfers over two years totaling $19,627,500 for repayments of principal (Amended Complaint, ¶ 16, Exhibit 1) ("New 2 Year Transfers,"; the New 4 Year Transfers and the New 2 Year Transfers, collectively, the "New Transfers").

13.     Not only are the Two Year Transfers and the Four Year Transfers new and peculiar to the Amended Complaint, they are based upon new factual allegations that were not alleged nor do they arise from allegations made in the Complaint.  Specifically, the new causes of action in the Amended Complaint seek to "avoid and recover all monies previously paid to Defendant during the pendency of the Ponzi scheme, including amounts constituting repayment of principal, and amounts in excess of principal (however denominated, including but not limited to, 'fees," "interest," or 'points'" (Amended Complaint ¶ 5)(emphasis added). These hundreds of transfers (and tens of millions of dollars) are referenced for the first time in the Amended Complaint, and go above and beyond the narrowly focused "Prepetition

Distributions of fictitious profits from the Ponzi scheme" alleged in the Complaint.  *See* Complaint ¶¶ 14, 15.

14.    Halbert files this Opposition requesting the Court deny the Motion for Leave in its entirety.

## II. ARGUMENT

### A. The Amended Complaint Does Not Satisfy Federal Rule of Civil Procedure 15(a)

15.    Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave [to amend pleadings] when justice so requires."  Rule 15(a) is to be applied liberally.  *In re LG. Phillips Displays USA, Inc.,* 395 B.R. 864, 868 (Bank. D. Del. 2008); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997).

16.    Justice, however, does not always necessitate an amendment, and when a complaint may be amended is not without boundaries.  Courts generally consider four factors to determine whether leave to amend is appropriate: (1) if delay in seeking amendment is undue; (2) if delay in seeking amendment is prejudicial to the opposing party; (3) if delay in seeking amendment is motivated by bad faith; and (4) if the amendment is futile in that it fails to state a claim for which relief can be granted.  *Foman v. Davis*, 371 U.S. 178, 182; *Cureton v. NCAA*, 252 F.3d 267, 272-273 (3d Cir. 2001); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482; *Magno v. Rigsby (In re Magno)*, 216 B.R. 34, 39 (9th Cir. B.A.P. 1997); *In re Mortg. Lenders Network, USA, Inc.*, 395 B.R. 871, 876 (Bankr. D. Del. 2008).

17.    All four the factors when considered in relation to the Amended Complaint firmly support a denial of the Motion for Leave.

### (i)    The Delay In Seeking the Amendment is Undue

18.     While delay alone is an insufficient ground to deny leave to amend, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001), citing *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n.*, 573 F.2d 820, 823 (3d Cir. 1978) (denying motion to amend where lower courts concluded the factual information on which the proposed amendment relied was known almost two-and-a-half years before plaintiffs sought leave to, determined that no "reasonable explanation" existed to overlook the delay, and that the only real reason advanced by plaintiffs for the substantial lapse in time was plaintiffs' misplaced confidence in their original disparate impact theory.). Indeed, while bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires a focus on the movant's reasons for not amending sooner. *Id.* at 273.  See *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654-55 (3d Cir. 1998) (rejecting proposed second amended complaint where plaintiffs were repleading facts that could have been pled earlier and noting that "a plaintiff has to carefully consider the allegations to be placed in a complaint before it is filed").

19.     In the instant case, it is without question that the delay is undue and Plaintiff has provided no explanation to support leave to amend, absent acknowledging a calculated decision not to include the New Transfers and claims in the Complaint.  *See* Motion for Leave ¶ 2.  Indeed, all of the information relied upon by the Plaintiff in the Motion for Leave was available from the time he was appointed and the professionals representing him had access to all of the Debtors' books and records since at least February 15, 2018.  *See* Jeremiassen Decl. ¶¶ 1-4.  Specifically, Plaintiff and his professionals identify that they have maintained such books and records (including

electronic communications) formerly owned by the Debtors, and that professionals have access to such records.  *See* Jeremiassen Decl. ¶¶ 1-4.

20.    Despite having access to this information for over twenty (20) months prior to the date the Complaint was filed, the Complaint omitted any factual allegations concerning the New Transfers and focused solely on alleged "Prepetition Distributions of fictitious profits from the Ponzi scheme".  *See* Complaint ¶¶ 14, 15.  Indeed, during the next twenty (20) months after the Complaint was filed, no new facts were discovered by the Plaintiff that were used in the Amended Complaint.  All of the facts which now appear and support the basis of new causes of action in the Amended Complain were present and known to the Plaintiff long before the Complaint was filed and long before the period of limitation ran.  The Plaintiff failed to piece together his case from such existing information.  He cannot now come forward and advance what he should have and could have advanced then.  At a minimum, such delay is completely undue and unnecessary.

21.    As a result, it is clear that the Plaintiff's failure to carefully consider the allegations to be placed in the Complaint with records already in his possession before he filed the Complaint; and the Plaintiff's failure to replead facts sooner than twenty (20) months after the Complaint constitutes undue delay.

**(ii)    Halbert Will Be Unduly Prejudiced If Plaintiff Is Granted Leave To Amend The Complaint.**

22.    Undue (or substantial) prejudice to a non-moving party is a sufficient ground for denial of leave to amend.  *Id*. at 273.  The issue of prejudice requires that a court to focus on the hardship to the non-moving party if the amendment were permitted. *Id*., citing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) (evaluating whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.).

23.     Any action seeking to recover in excess of $37 Million in purported fraudulent transfers — even one in which the claims are time-barred—will require a significantly more vigorous, and correspondingly costly defense on the part of Halbert than the original Complaint seeking to avoid fraudulent transfers in the amount of $1,106,175.31 required.

24.     If the Amended Complaint is permitted, it will be as if an entirely new, and significantly more complex and substantial avoidance action had just been filed against Halbert. Moreover, Halbert will have, and will be required to investigate and establish additional facts to support, different and more extensive defenses to Plaintiff's amended claims.

25.     Accordingly, and for the additional reason that it would impose significant and undue prejudice on Halbert, the Motion for Leave should be denied in its entirety.

**(iii)     Halbert Respectfully Submits the Motion for Leave was filed in Bad Faith**

26.     Inquiries into bad faith require courts to consider the plaintiff's motives for not having amended the complaint sooner. *Miller v. Welke* (*In re United Tax Gp., LLC*), 2018 Bankr. LEXIS 1290, at *16 (Bankr. D. Del. Apr. 26, 2018). In evaluating whether a motion to amend is brought in bad faith, the scope of the court's inquiry is limited to, "whether the motion to amend *itself* is being made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith. *Id.*, citing *TruePosition, Inc. v. Allen Telecom, Inc.*, C.A. 2002 U.S. Dist. LEXIS 12848, at *5 (D. Del. July 16, 2002).

27.     Bad faith is readily apparent in Plaintiff's filing of the Motion for Leave. Specifically, the Motion for Leave was filed based solely on purported facts that have been in Plaintiff's possession for years and was only filed after the parties failed to find an amicable resolution of the Complaint. As the New Transfers and claims are matters that clearly go beyond the narrowly focused Complaint and are obviously time barred, the Plaintiff's motivation for filing

the Motion to Leave is clear and is centered on an attempt to increase the costs of this case and create fear of astronomical claims.

      **(iv)**     **The Requested Amendments Are Futile.**

28.     "[A]mendment of a complaint is 'futile' if 'that claim would not be able to overcome the statute of limitations.'" *Anderson v. Bondex Int'l, Inc.*, 552 F. App'x 153, 156 (3d Cir. 2014) (quoting Cowell v. Palmer Twp., 263 F.3d 286, 296 (3d Cir. 2001)). Where a claim is barred by the statute of limitations, amendment is only permitted if the proposed amended complaint "relates back to the date of the original pleading." FED. R. CIV. P. 15(c)(1). See also *Glover v. F.D.I.C.,* 698 F.3d 139, 145 (3d Cir. 2012)(opining that a pleading relates back to the date of the original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."); *Peltz v. CTC Direct, Inc. (In re MBC Greenhouse, Co.)*, 307 B.R. 787 (Bankr. D. Del. 2004) (Plaintiff's motion to amend its complaint denied as to request to add new and different preference transactions.).

29.     The focus of a "relation back" analysis is on whether the factual allegations made in the first complaint were sufficient to give the opposing party fair notice of the allegations made in the second complaint. *Stichting Pensionfunds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1133 (C.D. Cal. 2011) ("The Ninth Circuit has made clear that the emphasis is not on the legal theory asserted by Plaintiff, but rather on the operative facts of the claim."); *Magno,* 216 B.R. at 39; *Coan*, 179 B.R. at 395 (*citing Rosenberg v. Marti*n, 478 F.2d 520, 526 (2d Cir.1973)). Specifically, courts have found that amended fraudulent conveyance claims related back to the original complaint only when the movant demonstrates that these new claims were part of a course of conduct and specific allegations of such conduct in the original complaint put the defendant on

notice of the allegations in the amended complaint.  *Brandt v. Gerardo (In re Gerardo Leasing, Inc.)*, 173 B.R. 379, 388 (Bankr. N.D. Ill. 1994) (stating that "amended claims should not be presumed to relate back merely because the additional transactions bear the same label as 'preferential' or 'fraudulent'") (*citing Dworsky v. Alanjay Bias Binding Corp.*, 182 F.2d 803, 805-06 (2d Cir. 1950)); *Gordon v. Slaughter*, 242 B.R. 97, 102 ("The debtor-creditor relationship does not alone provide a basis for finding a common scheme or course of conduct that would support relation back.  Each transfer is an isolated event."); *Metzeler v. Bouchard Trans. Co., Inc. (In re Friedrich-Wilhelm Metzeler)*, 66 B.R. 977 (Bankr. S.D.N.Y. 1986) (holding that the amended complaint did not relate back to the original complaint because the "mere pleading of a statute offers nothing to relate back to . . .").

30.    The bankruptcy court's reasoning and decision in *Gordon v. Slaughter,* 242 B.R. 97, 102, is particularly instructive.  In *Gordon*, the Plaintiff failed to allege any specific facts in his original complaint, other than repeating the statutory elements of his avoidance claims and alleging the total amount of transfers sought to be avoided.  *Id.*  Thereafter, after the limitation period had expired, the Plaintiff filed an amended complaint and argued that it related back to the original complaint because it merely increased the total amount of transfers sought to be recovered. *Id.*

31.    The Plaintiff in *Gordon* argued that the amendment was not a new claim, because it would only increase the amount of the original claim under the same causes of action.  The *Gordon* court emphatically rejected this argument, however, stating that the Plaintiff "seeks to add a claim which will require proof of its own unique set of facts, and that "[i]n determining whether an amended cause of action is to relate back, the emphasis is not on the legal theory of the action,

but whether the specified conduct of the defendant, upon which Plaintiff is relying to enforce his amended claim, is identifiable with the original claim." *Id.*

32.    The *Gordon* court found the Plaintiff's amendment failed this test.  The court emphasized that "[t]he mere allegation that all of the transactions are fraudulent transfers does not make them part of the same conduct.  Proof for each transaction would be different and merely pleading the statute offers nothing to which an amendment can relate back." *Id.* at 103 (*citing Peachtree Warehouse*, 1 B.R. at 983-84) (internal citation omitted).

33.    The case of *In re MBC Greenhouse, Co.* is also similar to the case before this Court.  In *MBC Greenhouse* the plan administrator sought to amend his original complaint to increase the number and amount of the alleged preferential transfers after the statute of limitations had run.  *In re MBC Greenhouse, Co.,* 307 B.R. 787, 790-793.  The *MBC Greenhouse* court denied the plan administrator's request to amend the original complaint because the proposed amendments to the complaint sought to add new and different preference transactions.   *In re MBC Greenhouse, Co.,* 307 B.R. 787, 790-793 (favorably citing and adopting the analysis in *Coan* and *Gordon* referenced above).

34.    The Plaintiff must demonstrate that the New Transfers arose out of the same conduct, transaction or occurrence that was set out in the Complaint.  The Plaintiff simply cannot do this, as its factually and legally impossible.  Similar to *Gordon*, the New Transfers are based on completely new facts and the New Transfers are never identified in the Complaint.  Complaint, ¶¶ 5, 14-22, Exhibit A.  Because Plaintiff here alleged no facts in the Complaint sufficient to put the Halbert on notice that he intended to go after the New Transfers, the Motion for Leave must be denied.

35.     Further, the requisite common core of operative facts does not exist between the Complaint and the Amended Complaint.  The Complaint provides neither a reservation of rights as to, nor any notice to Halbert that the Plaintiff intended to seek avoidance and recovery of, any later-discovered transfers.

36.     While the Complaint seeks to recover "'net winnings,' interest paid during the pendency of the Ponzi scheme" (Complaint ¶ 5), the Amended Complaint seeks to "avoid and recover all monies previously paid to Defendant during the pendency of the Ponzi scheme, including amounts constituting repayment of principal, and amounts in excess of principal (however denominated, including but not limited to, 'fees," "interest," or 'points'" (Amended Complaint ¶ 5)(emphasis added).  These transfers are referenced for the first time in the Amended Complaint.

37.     Finally, the Complaint makes no reference to: (1) seeking to avoid transfers for the repayment of the principal of actual loans made by Halbert to Debtors in the amount of $37,318,500; (2) Halbert having a personal relationship with Shapiro that would have made him privy to the Ponzi Scheme; (3) any reference to the Halbert Ledger; or (4) the amount and dates of the New Transfers.  *See* Complaint.

38.     Based upon the foregoing, all four the factors to be considered when determining whether to allow an amended complaint firmly support a denial of the Motion for Leave in this case.

### III.CONCLUSION

WHEREFORE, the Halbert hereby request that the Court deny the Motion for Leave in its entirety.

Respectfully submitted,

LEECH TISHMAN FUSCALDO & LAMPL, LLC

Dated:  August 2, 2021
      Wilmington, Delaware

By:/s/ Gregory W. Hauswirth
    Gregory W. Hauswirth (DE Bar No.5679)
    1007 North Orange Street, 4th Floor
    Wilmington, DE  19801
    Telephone:  302.332.7181
    Facsimile:  412.227.5551
    ghauswirth@leechtishman.com

    *and*

    Patrick W. Carothers (PA Bar No. 85721)
    525 William Penn Place, 28th Floor
    Pittsburgh, PA  15219
    Telephone:  412-261-1600
    Facsimile:  412-227-5551
    pcarothers@leechtishman.com

    *and*

    Robyn B. Sokol
    200 South Los Robles Avenue, Suite 300
    Pasadena, California
    Telephone: 626-796-4000
    Facsimile: 626-795-6321
    rsokol@leechtishman.com

    *Attorneys for Defendant, Kenneth Halbert*